## LOUIS A. NALL et al. v. CHARLES NALL, Appellant.

### Division One, May 31, 1912.

1 **PARTITION: Interlocutory Decree: No Term Bill of Exceptions.** Under the circumstances of this case, which was a suit for the partition of real estate under a will, which was not set out in the petition, but which did aver the land had been devised to their mother for life, with remainder to the two plaintiffs and defendant in equal portions, and pleaded certain incumbrances, to which defendant filed answer admitting the truth of the petition, and thereupon an interlocutory judgment was entered in accordance with the petition and ordering the land sold at the next term, it is *held* that the judgment of the court refusing, at the next term and before the land was sold, to permit defendant to amend his answer, so as to aver that neither the plaintiffs nor defendant had any interest in the land in dispute, but that the will converted the land into money, must be affirmed, because there is no bill of exceptions as to matters occurring prior to the interlocutory decree, and that decree recites that evidence was heard and argument of counsel made.

2. **WILL: Conversion of Real Estate Into Money: Reconversion by Parties: Mortgage.** A will in legal effect may convert real estate into money, yet subsequent acts of the legatees may reconvert the subject-matter into land; and they may reconvert at any time before actual conversion takes place—the constructive conversion being the one made by the will, and the actual conversion, in the case of lands, being the one made by the sale. Where the land has never been sold under the provisions of the will, no actual conversion has taken place; but where, prior to a partition suit, each legatee has given a separate deed of trust upon his respective undivided

aliquot interest, there was a clear election to reconvert and there was a reconversion. Likewise there was a clear reconversion by defendant when, after the interlocutory decree and order of sale, he gave a deed of trust on his interest.

3. ————: ————: ————: **By Petition and Answer.** Legatees entitled to the proceeds of the land, by their petition and answer in the partition suit in which they claim the land rather than the proceeds, elect to reconvert the subject-matter into land, although it was constructively by the will converted into money; and that they do by allegations in the petition that the land was left to their mother for life, with remainder in fee to plaintiffs and defendants, and pleading certain incumbrances in the land made by plaintiffs and by defendant, to which defendant answers admitting the allegations of the petition.

Appeal from Clay Circuit Court.—*Hon. F. H. Trimble,* Judge.

AFFIRMED.

*T. A. Witten, Chapman & Hanger* and *Henry T. Ferriss* for appellant.

(1) To maintain partition the parties plaintiff and defendant must together have an actual estate in the lands sought to be partitioned. R. S. 1899, sec. 4373 (now sec. 2559, R. S. 1909); McCabe v. Hunter, 7 Mo. 355; Welsh v. Anderson, 28 Mo. 293; Donaldson v. Allen, 213 Mo. 293. (2) Where the law creates a life estate at the termination of which the land is directed to be sold, no title passes to the heirs, but the real estate is converted into money upon the death of the testator. Compton v. McMahan, 19 Mo. App. 501; Morris v. Stevenson, 128 Mo. App. 338; Eneberg v. Carter, 98 Mo. 647; In re Obannon, 142 Mo. App. 268. (3) Where a will creates a life estate and directs that the same be sold at the death of the life tenant, and names the life tenant as executrix, then the land should be sold by an administrator, with the will annexed. R. S. 1899, sec. 137 (now sec. 141, R. S. 1909); Dilworth v. Rice, 48 Mo. 136; Francisco v. Wingfield,

161 Mo. 542. (4) Land cannot be partitioned in violation of the terms of a will. The will in the present case directed the sale of the land, and partition would violate that provision. R. S. 1899, sec. 4373 (R. S. 1909, sec. 2559), Cubbage v. Franklin, 62 Mo. 364; Stevens v. De La Vaulx, 166 Mo. 20; Sikemeyer v. Galvin, 124 Mo. 367; McDonald v. O'Harra, 144 N. Y. 566; Stewart v. Jones, 219 Mo. 614. (5) The averments of the petition and the findings in the interlocutory decree are not supported by the evidence, but are inconsistent therewith. The plaintiff cannot sue on one theory and recover on another. Kennedy v. Daniels, 20 Mo. 104; Utassy v. Giedinghagen, 132 Mo. 53, 60; R. E. Co. v. Hotel Co., 202 Mo. 604; County v. Bank, 208 Mo. 225; Bank v. Rice, 143 Cal. 265; Mellen v. Mellen, 139 N. Y. 221; Wayne v. Fouts, 108 Tenn. 158; 22 Ency. Pl. & Pr., p. 602. (6) The court committed error in receiving in evidence the deeds of trust offered by plaintiffs, also the transcript of judgments against defendant, and the affidavits of witnesses. The deeds of trust and judgments were immaterial and irrelevant for any purpose, and the affidavits were plainly incompetent.

*Sandusky & Sandusky* for respondents.

(1) The will in this case gave the widow a life estate in the ninety acres, and then says, "At her death to be sold and equally divided between my three sons, namely, William W., Charles P. and Lewis H. Nall, share and share alike." No one is named to make the sale. Where was the fee in remainder? The legal title in fee in remainder was in the three sons by descent; the equitable title in fee in remainder was in them under the will, as the absolute and exclusive owners of the proceeds, in the event of sale. The three sons, therefore, owned this land, subject to their mother's life estate, and subject to the power of sale. Reed v. Underhill, 12 Barb. 113; Gest v. Flock, 2 N. J. Eq.

108; Eneberg v. Carter, 98 Mo. 647; Williams v. Lobban, 206 Mo. 399. (2) Under this will the equitable or constructive conversion occurred, if at all, at the widow's death. Before actual conversion, by sale, the interest of the sons, and of each of them, was subject to judgment liens, or to mortgage, or to voluntary conveyance. If the title and interest of all were transferred, a reconversion would take place, and the sale could be dispensed with; if only one conveyed, it would be an election binding on him, but subject to the power of sale, and his grantee, in the event of sale, would stand in his shoes and receive his share of the proceeds. Eneberg v. Carter, 98 Mo. 647; Simonds v. Harris, 92 Ind. 505; Koons v. Mellett, 121 Ind. 585; Sayles v. Bert, 140 N. Y. 376; Horst v. Dagne, 34 Ohio St. 371; Gest v. Flock, 2 N. J. Eq. 108; Bank v. Rice, 76 Pac. 1020; Reed v. Underhill, 12 Barb. 113; Mandlebaum v. McDonell, 29 Mich. 78; Brumfield v. Drook, 101 Ind. 196; Railroad v. Morgan, 162 Ind. 331; Huber v. Donahue, 49 N. J. Eq. 125; Prentice v. Jansen, 79 N. Y. 485; Bowen v. Swander, 121 Ind. 164; Barnard v. Keathly, 230 Mo. 209; Williams v. Lobban, 206 Mo. 399; Comer v. Light, 94 N. E. (Ind.) 325. (3) In this case each of the three sons had executed a mortgage upon his "undivided one-third interest" in this land, and the mortgagees are parties to this suit, asking the enforcement of their liens. This was an election by all. Two sons sue in partition, alleging an ownership in themselves of two-thirds undivided, and in appellant of one-third undivided, subject to their several mortgage debts due to the mortgagee defendants, and appellant files answer admitting these allegations, and upon these pleadings judgment is rendered for partition and no objection made or exception saved. This was again an election by all. These two elections are strengthened by the facts that appellant had rented this land two years, that no application had been made for letters *de bonis non*, though the life

tenant had been dead three years, and that, when this suit was filed, appellant employed attorneys to hold for him his interest in this land as land, and to avoid a sale.   (4)  The words "grant, bargain and sell" in a mortgage carry the statutory covenants, one of which is "that the grantor was, at the time of the execution of such conveyance, seized of an indefeasible estate in fee simple in the real estate thereby granted," and "for further assurances."   R. S. 1909, sec. 2793; Cockrell v. Bane, 94 Mo. 444; Boyd v. Haseltine, 110 Mo. 207; Joy v. Yancey, 129 Mo. 509.   And the mortgagor is precluded from saying he had no estate in the mortgaged land.  Jones v. Reese, 65 Ala. 134; Clark v. Baker, 14 Cal. 612; Bailey v. Trustees, 12 Mo. 174; Layson v. Cooper, 174 Mo. 221.   (5)  A sale by the parties, or in partition, is not in contravention of the will, but in harmony with it.   Barnard v. Keathley, 230 Mo. 228; Spratt v. Lawson, 176 Mo. 182; Green v. Titman, 124 Mo. 372; Gest v. Flock, 2 N. J. Eq. 108; Prentice v. Jansen, 79 N. Y. 485; Mandlebaum v. McDonell, 29 Mich. 78; Bank v. Rice, 76 Pac. 1020; Reed v. Underhill, 12 Barb. 113; Greenland v. Wadell, 116 N. Y. 246.   (6)  The motion to set aside the interlocutory judgment and permit appellant to amend his answer and make new issues was addressed to the discretion of the court, and the higher court "will not interfere unless it is manifest that the discretion has been arbitrarily and unjustly exercised."   Ensworth v. Rarton, 67 Mo. 622; Harrison v. Hastings, 28 Mo. 346; Mfg. Co v. Givens, 35 Mo. App. 602; Greene v. Gallagher, 35 Mo. 226; Ferguson v. Railroad, 35 Mo. 452; Joyce v. Growney, 154 Mo. 263; Carter v. Dilley, 167 Mo. 571; Prehm v. Porter, 165 Mo. 115; Clark v. Transfer Co., 127 Mo. 269.   (7)  No term bill of exceptions was filed at the November term, 1908, when the interlocutory judgment was rendered; the record proper, including said interlocutory judgment, is regular, and, upon said record proper, the questions of

conversion and reconversion do not arise; at the Feb-
ruary term, 1909, the appellant sought, by filing his
motion to set aside the interlocutory judgment and for
leave to amend his answer, and by offering in evidence
the will on said motion, to raise questions of evidence
and pleading and law which should have been raised
by answer and evidence at the November term, and
should have then been saved by a term bill of excep-
tions. Reineman v. Larkin, 222 Mo. 156; Richardson
v. Association, 156 Mo. 165; Blanchard v. Dorman, 236
Mo. 436; Simpson v. Scroggins, 182 Mo. 561.   (8) The
overruling of said motion to set aside the interlocu-
tory judgment and for leave to amend answer cuts
out the question of conversion and reconversion, and
of the proper pleading in such case, as the evidence and
exceptions saved at the February term on this motion
cannot relate back to the November term, 1908, as if
then saved; and upon the record proper these ques-
tions cannot and do not arise.


GRAVES, P. J.—Action in partition.   In 1904
William H. Nall departed this life in Clay county,
Missouri, seized and possessed of the land involved
in this controversy.  He left a will, the material por-
tions of which are:

"3rd.  I will and devise all my real estate to my
wife during her natural life, and at her death to be
sold and equally divided between my three sons,
namely, William W., Charles P., and Lewis H. Nall,
share and share alike.

"4th.   My daughter Fannie, now intermarried
with Edward Bowring, I have, by advancement given
to her her full share of my estate, in real and personal
property."

Some dates and data become material to deter-
mine the ultimate question in the case.  The widow,
Ester A. Nall, was made executrix of the will, but died
in September, 1905, intestate.  In William H. Nall's

estate final settlement was made February 15, 1907, and final settlement in her estate was made October 30, 1907. May 23rd, 1908, this suit was filed, and in the petition it was alleged that the plaintiffs owned two-thirds of the land (one-third each) and the appellant, Charles P. Nall, the other third, all in fee. This petition did not set out the will of William H. Nall, but did aver that by such will the land was left to the mother for life, with remainder in fee in the plaintiffs and Charles P. Nall. It alleged the death of the widow, and pleaded certain incumbrances placed upon the lands by the plaintiffs and Charles P. Nall. It also alleged certain rents to be due from the said Charles P. Nall, and prayed for an accounting thereof and for the partition and sale of the lands involved. To this petition the appellant here, one of the defendants below, filed answer as follows:

Now comes defendant Charles P. Nall, and for his separate answer to the allegations in plaintiffs' petition, admits the truth of the same, and asks the court to protect his rights and interest in the real estate therein described.    SIMRALL & SIMRALL,
Attorneys for defendant Charles P. Nall.

November 11, 1908, an interlocutory judgment was entered in accordance with the prayer of the petition. No exceptions were saved to anything done at the November term of court. Under this judgment the land was advertised to be sold at the February term of the court, or on March 22, 1909. March 12, 1909, at the February term aforesaid, appellant, by different counsel, filed his motion in the circuit court asking that he be permitted to amend his answer so as to aver that neither the plaintiffs nor this appellant had any interest in the land in dispute. He avers in the motion that the answer theretofore filed was by reason of a mutual misunderstanding of himself and his counsel as to his right and interest in the land. Upon this motion evidence was heard, and thereafter the same was overruled, and the land sold, deed made, and order

of distribution made. The exceptions upon this hearing were preserved by bill and they are the only exceptions here for review. From the evidence introduced upon this motion, it appears that the appellant and his then counsel did in fact examine the will, but as they aver, only with the idea of determining whether the appellant here, defendant there, could have his interest in the land set out in kind. It was further shown that Charles P. Nall had mortgaged his "undivided one-third interest" in said land for $1500 on, March 25, 1907, more than a year prior to the partition suit. This deed was in force at the time the suit was filed and at the time of judgment. The plaintiffs had likewise encumbered their interest prior to the trial. These mortgages were all introduced in evidence on this motion. There was likewise introduced three other mortgages or deeds of trust made before the suit by appellant, in each of which he undertook to convey his undivided one-third interest in this land. These had been satisfied of record. There was also introduced in evidence a deed of trust for $702 executed by appellant after the interlocutory decree, in which said deed he undertook to convey his "undivided one-third interest" in this land. This sufficiently states the case.

I. There are two reasons for an affirmance of this judgment. The first goes to the condition of the record. There is no bill of exceptions as to matters occurring prior to the interlocutory decree. The petition avers that the respondents and appellant owned the land by virtue of the will of their father. The terms of the will are not pleaded. What evidence there might have been introduced on the hearing of the case does not appear. The interlocutory decree recites that evidence was heard and argument of counsel made. If it be granted that the will, afterward preserved in the bill of exceptions on the mo-

tion, was in fact in evidence at the trial of the issues, and if it be further granted that under the terms of the will the land was converted into money upon the death of the testator (a debatable question under the terms of the will) yet there might have been ample evidence before the court to show that the parties at the proper time had elected to reconvert, and if so they would then in fact have held the land as land, but under and by virtue of the will of their father. It is to be presumed that the trial court in the matter of this judgment proceeded by right and not by wrong, and in the absence of a bill of exceptions preserving the evidence, it will be presumed that the court had evidence upon which to base its findings and judgment. This is elementary. Now in this condition of things, we cannot say that the trial court abused its discretion in refusing to permit the appellant to amend his answer.

The evidence heard at the trial and within the knowledge of the trial court might have been such that it would be a strain of his discretion to have permitted the amendment as suggested in appellant's motion for leave to amend. The exact condition the trial court knew, and we are precluded from knowing, because of the absence of a term bill of exceptions preserving the evidence.

But we need not rest the case here, and will take up the merits as now alleged by appellant.

II. Appellant urges that under the will of the father neither the respondents nor the appellant had any interest in the lands in controversy, and for that reason the motion to set aside the interlocutory judgment should have been sustained, and the final judgment is erroneous. This contention proceeds upon the theory that the father's will had the effect of converting this land into money so far as the respondents and appellant are concerned. To our minds we need not

discuss the somewhat involved question as to whether or not this will operated as appellant contends. We may for the disposition of this case concede that the effect of the will, so far as respondents and appellant are concerned, was to convert this land into money at the date of the testators death, yet it might have been real estate as to the same parties at the date of the institution of this suit. Under the facts shown and the governing law we think the respondents and appellant owned this property as land and not as money when this suit was brought and when it was tried. The doctrine of reconversion is as thoroughly grounded in the law as is the doctrine of conversion. In other words that whilst the terms of a will may in legal effect convert land into money, yet subsequent acts of the beneficiaries may reconvert the subject-matter into land. The doctrine of reconversion seems to be conceded in a way by appellant's counsel, but they say that the facts shown upon this motion do not show a re-conversion, and this is the one vital question upon this branch of the case.

To our minds it is immaterial for what we have to say under this point whether the equitable conversion of the land into money is held to have occurred at the death of the testator and thereby upon the incoming of the will, or at the death of the life tenant. It is clear no actual conversion could have taken place until the falling-in of the life estate. Up to the actual sale we have only a constructive conversion.

In 9 Cyc., p. 853, we have a concise definition of the term reconversion, thus: "Reconversion is that imaginary process by which a prior constructive conversion is annulled and the converted property restored in contemplation of law to its original state."

This imaginary process is one which takes place upon the election of the beneficiary under the instrument creating the constructive or equitable conversion. This doctrine of election is concisely stated by the

same authority and on the same page above named, in this language: ''In the application of the doctrine of equitable conversion, it is a well-settled rule that .if money is directed by a will or other instrument to be laid out in land, or land is directed to be turned into money, the party entitled to the beneficial interest may in either case, if he elects so to do, cause a reconversion of such property and take it in its original state.''

Both the doctrine of ''equitable conversion'' and the doctrine of ''reconversion by election'' being thoroughly recognized in the law, the only questions left in this case are, (1) When should the election to reconvert take place, and (2) What evidence is sufficient to show such election to reconvert.

The rule as to the time of the election to reconvert is given in 9 Cyc., p. 857 in this language: ''The right of election must be exercised before the property is actually converted, and until it be actually exercised the property bears the same character and remains subject to the same rules of transmission to representatives as if conversion were actually made.''

It will be seen that under this rule the beneficiaries may elect to reconvert, at any time, before the actual conversion takes place. The word ''actual'' is used to distinguish it from a mere constructive conversion. The constructive conversion is the one made by the written instrument; the actual conversion, in the case of lands, is the one made by the sale. Under the rule, therefore, the beneficiaries may elect to hold the land rather than the proceeds of the land, at any time before the sale, or actual conversion. And this would be true whether we fix the date of the constructive conversion at the day of the testator's death or at the date of the life tenant's death. The exact date of the constructive conversion is not material to the determination of this case.

243 Sup.—17

Upon the evidence adduced upon this motion no actual conversion had ever taken place. In other words the land had never been sold under the provisions of the will. Was there evidence of an election to reconvert? We think so. Prior to the suit each beneficiary under the will had given a deed of trust upon his respective "undivided one-third interest" in this land. The giving of these instruments prior to the actual conversion was a clear election to reconvert. "So the giving of a mortgage by a person entitled to the proceeds of the sale of land is a clear election upon his part to take land." [9 Cyc. 855.]

In Gest v. Flock et al., 2 N. J. Eq. 115, the learned chancellor said: "There is another view of this case equally fatal to the complainant's contentions. Where a sale is directed to be made of lands, and the same person is entitled to take the lands that would take the money in case of a sale, and the party elects to take lands, a court of equity will not disturb that election, or compel a sale. [Osgood v. Franklin, 2 John. Ch. Rep. 21; Amler v. Amler, 3 Vesey, 583.] The giving of the mortgage by Albert, was a clear election on his part to take land, and upon no principle can that election be now disturbed."

In that case the widow held a life estate provided she did not marry. The son Albert was one of the beneficiaries under the will of the father, which will directed the sale of the land by the administrators. No sale was made, and after Albert, the son, became of age, he and his mother executed a mortgage to the defendant Flock. Some years after this the said Albert made an assignment by deed to the plaintiff Gest, "of all that part, share, proportion and dividend of the personal and real estate of the said Hendrick Schenck, which theretofore became due, or which might thereafter descend or become due and payable to the said Albert." Flock foreclosed his mortgage. Plaintiff's bill sought to compel the executors to sell the land and

to pay Albert's share to complainant. The will is much like the will at bar. It was under these facts that the New Jersey court spoke as above indicated.

But in the case at bar we find that the appellant gave not only one, but several deeds of trust on his interest in this land prior to the suit for partition. The respondents had likewise elected to reconvert by giving mortgages or deeds of trust on their parts. So all of the beneficiaries had elected to reconvert before the filing of the suit. Not only so, but the appellant here gave a further mortgage on his part even after the interlocutory decree.

But going a step further. By the petition and answer in this case there was an election by all the beneficiaries to reconvert. By the petition two of the beneficiaries under the will, entitled to the proceeds of the land, claimed the land rather than the proceeds. This was a solemn election upon their part. In answer to that petition this appellant made his election just as solemn. The petition pleaded the appellant's prior election by the deed of trust alleged to have been given by appellant. This deed of trust appellant did not deny. From it all it must be held that all the beneficiaries under the will had elected to reconvert, and that at the institution of the suit and by the institution of the partition suit, the parties held this land as land, and not as money. Not only so, but upon the face of the pleadings there appeared to the trial court the evidence of reconversion.

Other intricate and interesting questions need not be discussed. If there is any substance in the doctrine of reconversion, the judgment *nisi* is correct. Without intervening matters which we may preclude, the right to elect to reconvert exists to the date of an actual conversion by sale. Under the facts of this case there was a reconversion, and the beneficiaries under the will held the property as land, and not as money. The trial court committed no error in refus-

ing to further open up the case upon the motion of appellant, and its judgment on the merits was right. Let the judgment *nisi* stand affirmed. All concur.