In re Estate of JAMES McELEVEY; MISSISSIPPI VALLEY TRUST COMPANY, Executor, v. JOHN A. BURKE, Administrator of Estate of MARGARET McELEVEY, and MATTIE CONNOR, Appellants.

Division One, August 27, 1924.

1. **ADMINISTRATION: Devise of Real Estate Giving Executor Power to Sell: Conversion into Personalty: Final Settlement Within Statutory Period.** The fifth clause of the will read: "I authorize, empower and direct my executor, without obtaining order of court

therefor, from time to time, to sell all real estate I may own at the time of my death, any sale or sales to be public or private and with or without notice, at the option of the executor, and may be for either all cash or part cash and part on time; and upon such sale my executor shall make, execute, acknowledge and deliver a deed conveying the same, and to be for such prices or sums as to my executor may seem reasonable and of such form as my said executor may deem proper." Testator left no bodily heirs, but left a wife and an adopted child, and by the seventh clause of his will gave one-half of his property to his wife, one-fourth to the adopted child and one-fourth to charities. Held, that the law fixed the time for the sale of the real estate to be the time fixed by the statute for the administration of the estate, or at least required that the real estate should be sold within such reasonable time as the probate court might allow for closing up the estate, and the words "from time to time" did not prolong the executor's discretion beyond that period; neither did the fact that the executor was allowed to choose between a public and private sale, or between a cash and a time sale, change the express direction to sell; nor did the will create an estate in trust to be administered through a course of years by the executor as trustee. The will so converted the real estate into personalty as to convict the executor of wrongdoing in not closing the administration within the period provided by the statute for administering estates, and that such was the testator's intention is manifested by the further facts that the testator died soon after his will was executed, that his personal estate inventoried amounted to $5,618.15, that the will made specific legacies amounting to $5,500, and provided for the payment of funeral expenses, which alone amounted to $600, and allowed to the widow $600 in lieu of specific property, and by the seventh clause said: "After the payment of the legacies hereinbefore bequeathed and of the expenses of administering my estate, I give and bequeath one-half of the residue of my estate to my beloved wife absolutely"—thereby, in effect, depriving the wife of any interest in his estate if the sale of the real estate could be delayed indefinitely at the discretion of the executor. And the executor having taken charge of the real estate without a formal order of the probate court soon after the testator's death, a prolongation of the administration of the estate for thirteen years thereafter, with certain portions of the real estate still on hand at the time of final settlement, was unauthorized, and a final settlement of the administration without such sale was likewise unauthorized, and the executor, having proceeded as if he were trustee, and piled up costs after final settlement should have been made,

In re Estate of James McElevey.

was grossly negligent.  [Distinguishing Williams v. Lobban, 206 Mo. l. c. 409.]

2. ————: ————: Equitable Conversion: Life Estate.  The fact that the will did not create a life estate, and made no provision for testator's wife except to give her one-half of the residue of his estate, emphasizes the intent of the testator authorizing, empowering and directing the executor to "sell all my real estate" to be a direction that he sell it during the period designated by the statute as the allotted time for administering estates, and makes inapplicable the discussion of "equitable conversion" and "re-conversion by election" found in many cases.

3. ————: ————: Conversion: Positive Direction to Sell: Discretion. Where the will positively directs the executor to sell the real estate, without designating any particular time at which it is to be sold, the real estate is converted into personalty, and the executor has no discretion to postpone the sale indefinitely, but must sell within the period designated by the statute for administering estates, or within such reasonable time thereafter as the probate court may allow for closing the estate.

4. ————: ————: ————: ————: Trust for Infants.  The fact that in one clause of the will the testator creates a trust in a certain sum in favor of a minor child, and makes the executor trustee to receive and hold the trust fund until she reaches her majority and then to turn it over to her, does not in any wise alter the positive direction of the will to sell "all" of testator's real estate.

5. ————: ————: Reconversion by Election.  As a general rule final settlement can be enforced at the end of the statutory period for administration, but for good cause shown the court may grant further reasonable time in which to close the administration.  But where the will contains a positive direction to the executor to sell the real estate, there is no "re-conversion by election," nor a just cause shown for prolonging the administration beyond the statutory period, by the act of the executor in merely advancing money to the widow, given one-half of the residue of the estate by the will, as a part of her share of said residue.  Besides, all parties must elect to re-convert, or there is none.

## Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

REVERSED AND REMANDED.

Headnote 1: Conversion, 13 C. J. secs. 25, 27, 37; Executors and Administrators, 24 C. J. 651; Headnotes 2 to 4; Executors and Administrators: 2 and 3, 24 C. J. sec. 651; 4, 24 C. J. sec. 649 (1926 Anno). Headnote 5: no citation.  Headnote 6; Conversion, 13 C. J. sec. 88; Executors and Administrators, 24 C. J. secs. 2303, 2366.

*J. E. Carroll* for appellants.

(1) ·When all demands against an estate are barred by lapse of time, and time for contesting the will 'has expired, if then executor has on hand assets more than sufficient to pay all debts of estate and all specific legacies, it becomes executor's duty to pay all debts and all specific legacies, to make final settlement, and distribute the balance to residuary legatees. In re Pounds Estate, 166 Mo. 419; Sec. 240,· R. S. 1899; Clarke v. Sinks, 144 Mo. 448. (2) A provision in a will, "I·authorize, empower and direct my executor . . . to sell all real estate I may own at the time of my death," is unmistakable direction to sell, and the executor is obliged to make the conversion, and the proceeds thereafter are to be held and treated as personal property. Griffith v. Witten, 252 Mo. 627; Donaldson v. Allen, 182 Mo. 647; In re Estate of Branch, 123 Mo. App. 573. (3) Where there is an imperative direction to convert, a discretion given as to time of sale or mode or manner does not work an exception to the rule that in equity property will be treated as being already what the testator intended it to become. Woerner on Administration, sec. 342. If the power of sale under the terms of a will is vested in the executor itself as such, this power must be executed during the administration period. De Lashmutt v. Teetor, 261 Mo. 438; Donaldson v. Allen, 182 Mo. 647; In re Estate of Weston, 91 N. Y. 501; Woerner on Administration, sec. 538, p. 1185. (4) Until a claim has been allowed by the probate court or established· by a judgment of a circuit court and classed by the probate court, an executor has no right to appropriate any of the assets of the estate to its payment. Langston v. Canterbury, 173 Mo. 122; Sec. 224, R. S. 1899. (5) An executor is not authorized, without permission of probate court, to make repairs or improvements and subject the estate or

those beneficially interested such expenditures.  Langston v. Canterbury, 173 Mo. 122; 18 Cyc. 309 (4); Clark v. Bettleheim, 144 Mo. 259.

*D'Arcy & Neun* for respondent.

(1) Where a will devises the real estate to heirs, a naked power of sale given to the executor will not create a conversion of the realty into personalty. Eneberg v. Carter, 98 Mo. 647; Williams v. Lobban, 206 Mo. 399; Compton v. McMahan, 19 Mo. App. 494. (2) Notwithstanding a positive direction in a will to sell land, there will be no conversion from realty into personalty where the executor is given discretion as to time or other elements of sale. Compton v. McMahan, 19 Mo. App. 494; Williams v. Lobban, 206 Mo. 409. (3) Even if there had been a technical conversion, under the will, nevertheless the heirs have at all times had the right to re-convert the personalty back into realty, selling the real estate as real estate, if they considered that retaining it was injurious to their interests.  Williams v. Lobban, 206 Mo. 412; DeLashmutt v. Teetor, 261 Mo. 436; Godman v. Simmons, 113 Mo. 122. (4) Where the heirs seek to take advantage of the rents collected by an executor who has taken charge of real estate without an order of court, they cannot at the same time be allowed to refuse him credit for his expenditures. They must disaffirm both sides of the account or accept both. Langston v. Canterbury, 173 Mo. 122; Lewis v. Carson, 93 Mo. 589.

GRAVES, J.—This cause originated in the Probate Court of St. Louis.  James McElevey, by his last will, constituted the Mississippi Valley Trust Company the executor of his will.  He died November 4, 1901, and the named executor took charge of his estate.  The administration of the estate began shortly after his death, and continued to 1918 when a purported final settlement was filed.  At this time some real estate was left undisposed

of, and the executor had a claim of more than $2,000 against the estate. Exceptions were filed to this final settlement and the divers intervening annual settlements. These were overruled, and the final settlement approved over the exceptions filed. These exceptions covered not only items in the final settlement, but things involved in the several annual settlements. In fact, the exceptors took the position that the estate should have been closed within the two-year period then prescribed by law, and that under the terms of the will the executor had been remiss in not selling the real estate and closing up the estate within that time. There are divers allowances to the executor which are challenged, but these can best be grouped and disposed of in the course of the opinion. The real contest hinges upon the fifth paragraph of the will, which reads:

"Fifth. I authorize, empower and direct my executor hereinafter named, without obtaining order of court therefor, from time to time, to sell all real estate I may own at the time of my death, any sale or sales to be public or private and with or without notice, at the option of said executor, and may be for either all cash or part cash and part on time, deferred payments, if any, to be secured by first deed of trust on the property sold; and upon such sale my said executor shall make, execute, acknowledge, and deliver a deed or deed conveying the same, and to be for such prices and sums as to my executor may seem reasonable and of such form as my said executor may deem proper."

There was an exceedingly long administration of this estate, excuses for which are offered in the record. The duties of the executor are measured by this fifth section of the will, when taken and construed with the whole instrument. Matters of detail are left to the opinion. In addition to the above it should be said that decedent left no bodily heirs, but left a wife and an adopted child. By the 7th clause of the will the property was to go, one-half to the wife, one-fourth, to his heirs at law (this adopted

child) and one-fourth to certain charities. Of these facts there is no question. The trial court sustained the contentions of the executor, defendant herein, and from such judgment this appeal results. The widow of deceased departed this life at a time before this appeal, and her interest, or those under her, are represented by Burke, Administrator C. T. A. This suffices for a general outline.

I.   The assignments of error are numerous, and as they are all urged more or less we quote them as follows:

"1.   The court erred in approving executor's final and annual settlements and overruling exceptor's first exception to same.

"(a)   The court erred in failing to find and hold the executor should and could have made a final settlement of the estate of James McElevey two years after it took charge of said estate, to-wit: at the December Term, 1903, of the St. Louis Probate Court.

"(b)   The court erred in failing to find and hold that under the will of James McElevey there was an imperative direction to said executor to convert into cash all the real estate owned by James McElevey at the time of his death.

"(c)   The court erred in failing to find and hold that the executor failed to comply with the orders and directions in the will of James McElevey to pay over to the residuary legatees their respective residuary shares.

"(d)   The court erred in failing to find and hold that the failure of the executor to make final settlement at the December Term, 1903, of the St. Louis Probate Court, and within thirty days thereafter to distribute to each of the residuary legatees her or its respective share was unreasonable under all the facts of the case.

"(e)   The court erred in failing to find and hold that the failure of the executor to make final settlement and distribution was due to said executor's negligence.

"(f)   The court erred in failing to find and hold that the executor should be charged with interest on all funds

in its hands or that should have been in its hands when it was lawfully required to make final settlement until the time it did make final settlement.

"(g)   The court erred in failing to find and hold that the reasonable net value of the real estate left by James McElevey was at the time of his death $34,000.

"2.   The court erred in approving executor's final and annual settlements and overruling exceptor's second exception to same.

"(1)   The court erred in failing to find and hold that the executor, without authority of the probate court first had and received, had expended large sums of money belonging to the estate of James McElevey and that said executor did improperly and wrongfully take credit for said wrongful expenditures in its annual and final settlements.

"(2)   The court erred in failing to find and hold that the failure of the executor to make final settlement at the December Term, 1903, of the St. Louis Probate Court, was due to executor's negligence, and the taking credit by said executor for money expended by it after said term, for probate costs, taxes, interests, commissions, etc., was illegal and unwarranted."

There were some fifteen annual settlements in this case.   The real estate was taken in charge by the executor without formal order of the probate court.   This, as claimed by the counsel for executor, on the theory that the authority granted by the will authorized such course. Counsel for appellants contend that, if the executor had the right under the will, to take possession of the real estate, which they concede, then it was the duty of the executor to sell the real estate, and distribute the property within the period of two years, or if there were funds out of the personalty with which to discharge the debts and special legacies (which they claim to be true) then the estate should have been closed within the statutory period of two years, or shortly thereafter.   Complainants urge that the executor paid out moneys without authority of

law in discharge of liens upon the real estate, and in the repair and up-keep of the property. The executor urges that the widow objected to offers which it had for the sale of real estate (or parts thereof) and that with such objection upon her part it was difficult to sell. Such executor urges generally its inability to sell all the real estate, and pleads this, as well as the other named above, as excuses for its delay of thirteen or more years. Finally, when action for final settlement was moved, the executor duly filed the same, claiming over $2000 due to it, with certain portions of the real estate yet upon hand. The primary question is whether or not the executor was required to sell the realty by the terms of the will. If so, then the prolongation of the administration might or might not be wrong, owing to the facts developed. What the executor should have done, and the answer to such urgencies, become the first question in the case. This question we take next.

II. It becomes material to construe the fifth clause of the will, in so far as the duty of the executor is concerned. This estate was dragged along through many years, and when final settlement was forced it was really a settlement turning back the estate to the heirs with a claim against it in behalf of the executor. It is contended that even where there is a positive direction in the will to sell land, "there will be no conversion from realty into personalty where the executor is given discretion as to time or other elements of sale." Upon this position we are cited to one case from this court, i. e. Williams v. Lobban, 206 Mo. l. c. 409. It is true that in the Lobban case we were discussing the rule of equitable conversion, and the court indicated in a way that there was no equitable conversion of the land into money, under the facts of that case, but the case was made to really turn upon the doctrine of re-conversion. The court says:

*Sale During Statutory Period.*

"But conceding the doctrine of equitable conversion of land into real estate, it is equally well settled that the ultimate and absolute owner or owners, if *sui juris,* may elect to take the property in its existing state before it has been actually sold, if it is land, or invested in land or personalty, and put an end to the constructive conversion, and as equity will do nothing in vain the court will not compel the trustee to sell, for the beneficiary, who is absolutely entitled, may immediately re-convert the property. And a court of equity will not compel a trustee to execute a trust against the wishes of the *cestui que trust,* but will permit him to take the land if he elect to do so before the conversion has actually been made. [2 Underhill on Wills, sec. 719, note 3, and cases cited.] *And this presents the controlling question in this case.* Counsel for the defendant has with great care and discrimination collected a number of authorities to establish the rule that an equitable conversion of this land took place at the death of the testator Samuel Lobban and deduces therefrom that the devisees, his children, had no such interest therein that they could convey as land. But, as was said in 2 Underhill on Wills, section 703, 'It must be noted that the rule that the land is converted as of the date of the death of the testator is based upon the presumption of an intention where the will is silent as to the time of sale. It yields to a clear expression of a contrary intention fixing the time of sale in the future. If the testator expressly directs the sale to take place at a particular future time, as so many years after his death or after a life estate, or if he has made it to depend upon the request or consent of others, no conversion takes place until the date arrives which is indicated by the will when it *ought* to be sold.' And this was the rule announced by the Court of Appeals of New York in Savage v. Burnham, 17 N. Y. 1. c. 569, and Moncrief v. Ross, 50 N. W. 1. c. 435 and 436. In Meehan v. Brennan, 45 N. Y. Supp. 57, it was ruled: 'A conversion of realty into personalty is effected as of the time when the sale should have been made under

the implied power contained in the will, disposing of the proceeds of real estate, but not designating the person by whom the sale should be made.' In this case it is plain that Samuel Lobban directed his real estate to be sold after the death of his widow, but named no person by whom the sale should be made. In Richey v. Johnson, 30 Ohio St. l. c. 293, in which the contention was that the conversion should take place as of the date of the death of the testator, it was said: 'But we see no reason for giving a construction to the will—that is, in ascertaining the intent of the testator—why we should regard the conversion of the farm into money as taking place at the death of the testator, or at any time prior to the death of the widow. It is quite certain that the testator intended or contemplated no such conversion during her life. She was to have the use of the farm, as such, during her natural life.' [See, also, Brothers v. Cartwright, 2 Jones' Eq. (N. C.) 113.] In our opinion then it was the intention of Samuel Lobban that the sale of this real estate should be made after the death of his widow and that the conversion of the same into personalty should not be construed as taking effect prior to that time. Before that time, however, had arrived, as we have seen by the accompanying statement, *all of the devisees of Samuel Lobban except Napoleon Lobban had voluntarily elected to take their* interest in the land as land, and had conveyed the same, and by mesne conveyances the plaintiff herein had become the owner of their interest therein, and Napoleon Lobban's interest had also passed to the plaintiff by virtue of the deed under the attachment proceedings instituted by Christian."

And in conclusion the court said: "Our conclusion is then that as it clearly appears that the plaintiff has acquired by proper conveyances and proceedings the interest of all the beneficiaries under the will of Samuel Lobban, he would, in the event of a sale under the power contained in the will, be entitled to the entire proceeds, and is entitled to the land and is not bound to submit to

a sale of the property and the attending expenses and cost thereof, and the court below was right in granting him a perpetual injunction to prevent the sale.''

The suit was one by injunction to prohibit the sale of all the land of Samuel Lobban, deceased, by William H. Lobban, administrator *de bonis non,* under power of sale granted in his will. In ultimate conclusion the case does not rule the broad proposition contended for by respondent. It must be noted that the Lobban will delayed the actual conversion to the termination of the widow's life estate. In this case t˜.ere is an express direction to sell couched in the words, *''I authorize, empower and direct my* executor . . . without obtaining order of court therefor *from time to time,* to sell *all* real estate I may own at the time of my death.'' Counsel contend that there is a discretion because of the use of the words ''time to time.'' The executor was named for the purpose of administering upon and closing up the estate. The whole will so runs. In such case the law would fix the time of the sale to be the time granted by law for the administration of the estate, or at least to such reasonable time as the probate court should allow for the closing of the estate. This will does not create an estate in trust to be administered through a course of years by the trustee. Nor do the facts that the executor was allowed the right to choose between a public or private sale, or between a cash and a time sale, change the express direction to sell. This man left a wife, yet there is no provision for her sustenance save and except:

''Seventh. After the payment of the legacies hereinbefore bequeathed and of the expenses of administering on my estate, I give and bequeath the residue of my estate as follows, to-wit: One-half of such residue absolutely to my beloved wife, Margaret McElevey,''

Does this indicate a purpose upon the part of McElevey to have his property sold and divided, or does it contemplate that the wife must beg the executor for advancements on her share, as she had to do? To us it

evinces an intent to have his property sold, at least within the course of the time of an administration.

The will was executed on November 1, 1901, and the testator died November 4th of that year. He is presumed to have known his property. His personal property inventoried $5618.15. In his will he gave specific legacies amounting to $5500, and provided for the payment of funeral expenses and expenses of last illness, as also of all just debts. The funeral expenses alone were over $600, all of which were in the mind of the testator. The allowance of the widow in lieu of specific property was $600, so that the testator must have intended the prompt sale of his real estate. The expenses and specific legacies could not be paid out of all the personal property, and the widow would be left stranded, unless she got the cash from her devised one-half interest in the residue of the estate. The whole will clearly points to an intent upon the part of the testator for his executor to sell the realty, and close up his estate within the statutory period. In this, the will is entirely different from the Lobban case, supra. But we have with us the question as to whether or not this will so converted the real estate to personalty, as to convict the executor of wrong-doing in the administration thereof. Some legal phases we take next.

III. In addition to the facts in the preceding paragraph, as evidence of an intent upon the part of testator for a speedy sale, is the fact that the wife was not given a life interest in the property. In many cases where the doctrine of "equitable conversion," and "re-conversion by election" are discussed, the factor of a life estate appeared. Such was the case in Williams v. Lobban, supra. Here there is no provision for the wife, except her one-half of the residue of the estate. This fact emphasizes the intent of the testator to at least sell during the alloted time of administration.

Re-Conversion.

We feel no hesitancy in ruling that the realty was converted into personalty per force of the fifth clause of

this will, when considered with the will as a whole, the facts of which we have fully stated, supra. The date of the conversion was the death of testator. [De Lashmutt v. Teetor, 261 Mo. l. c. 436.] The only thing urged against this view is the alleged discretion in the executor. As to a sale there was no discretion. As to a sale there is an express direction, and every other portion of the will shows that a sale during a reasonable course of administration was contemplated. In Section 342, page 1141, 2 Woerner on The American Law of Administration (3 Ed.), it is aptly and rightly said:

"It should be remembered, however, that, where there is an imperative direction to convert, the discretion given as to the time of sale, or the mode and manner, does not work an exception to the rule; but if the conversion is postponed to a future time certain, before the arrival of which the property is, according to the testator's direction, to be enjoyed by persons other than the ultimate beneficiaries, there is of course no conversion until the expiration of such time."

The latter porton of the quotation has no application to this case, because no specific future date was fixed for the sale, as was the situation in Lobban's case, supra. There the date of sale was upon the termination of the life estate. Here we have no life estate, and the equitable conversion was at the death of the testator, and the duty to actually convert was within the time of the administration of the estate. [In the Matter, etc. of Estate of Weston, 91 N. Y. l. c. 510 et seq.; Donaldson v. Allen, 182 Mo. l. c. 647.]

In the latter case this court said: "Ordinarily, an executor or administrator has no power to sell the real estate except upon order of the probate court, to pay debts. But if the will expressly and absolutely directs the executor to sell the real estate, without vesting any discretion in the executor, and to apply the proceeds to the payment of debts or to distribute them, then the power adheres to the office of executor and is not personal, and

must be exercised during the continuance of the executorship, for in such cases the proceeds of the sale of the real estate become personal assets of the estate and are a proper subject of administration and distribution by the probate court.''

Speaking of a sale by direction of a will, this court in De Lashmutt v. Teetor, 261 Mo. l. c. 438, said: ''Had this power been vested in the executors themselves as such there can be no question that it must have been executed during their continuance in office or not at all. [Donaldson v. Allen, 182 Mo. 626, 647; Francisco v. Wingfield, 161 Mo. 542; Littleton v. Addington, 59 Mo. 275.] In the case we are considering it is the necessary intention of the testator to limit the power to the period included in the execution of his will, because its exercise was made a part of such execution and the money was to be paid to the executors for disposition in the performance of their official duties as such. The trust was evidently created because they could not perform those official duties in a foreign state, and to avoid the costs and intermeddling of strangers that would necessarily result from the appointment of ancillary administration with the will annexed in this State.''

The doctrine of ''equitable conversion'' and ''re-conversion by election'' are fully discussed in the following recent cases: Nall v. Nall, 243 Mo. 247; Griffith v. Witten, 252 Mo. 627, l. c. 643. They are applicable here.

In this case the power to sell was vested in ''my executor'' and this, too, in the face of the fact that the will created a trust estate in the fourth clause thereof. By this clause the respondent here is made a trustee to receive and hold for Mattie Connors the sum of $5000. This money the will contemplates should be paid over by respondent as executor to respondent as trustee under that fourth clause. This $5000 was to be held during the lifetime of Mattie Connors, she to receive the income therefrom, and at her death other disposition is made of the fund.

But in addition it should be said that the general rule is that final settlement can be enforced at the end of the statutory period. [3 Woerner on The American Law of Administration (3 Ed.) sec. 538, p. 1843.]  Of course, for good cause shown, the court may grant further reasonable time in which to close the administration.  In this case there was no "re-conversion by election."  The widow was merely advanced money on her share of the residue.  She made no election to re-convert.  But even if she had elected, this would not have been sufficient.  All parties must elect to re-convert.  [2 Woerner on The American Law of Administration (3 Ed.) sec. 342, p. 1143.]  There is no claim of election to re-convert by any of the beneficiaries.

Under the wording of this will we must hold as follows:  (a)  That there was an express direction to sell the real estate; (b) that it was received by the executor as personalty; (c) that the executor ought to have sold the real estate within the time of administration, two years, as then fixed by law, unless the time of closing the estate was extended for good reasons by the probate court; (d) that no good reason appears in this case.  The objection of the widow, as mere devisee, furnished no such reason; (e) the probate court should not have approved the final settlement until the estate had been fully administered; (f) that the executor has been grossly negligent in the handling of this estate; it proceeded as if it were a trustee, rather than an executor, and piled up court costs for thirteen years after a final settlement should have been made.  These rulings result in a reversal of the judgment, and the remanding of the cause, as the circuit court approved of the action of the probate court.

IV.  With the rulings, supra, we need not discuss the details of the final settlement, or the several annual settlements.  Nor need we discuss the liability of respondent for money paid out without authority of court, or interest

Matters Adjusted
in Final Settlement.

upon money held beyond the time of settlement. The law is well settled as to these matters, when the status of this case is once fixed, and that status is fixed by the rulings supra. This estate should be fully and finally closed, as contemplated by the will of testator, and respondent should be held for all remiss conduct during the unnecessary years of its futile administration. We say futile, because as yet there has been no compliance with testator's will directing a sale of the real estate, and a division of the funds.

The judgment is reversed and the cause remanded. All concur.