McLAUGHLIN, J., concurs with Mr. Justice LAUGHLIN.

---

### In re KEAR.

(Supreme Court, Appellate Division, Second Department. June 11, 1909.)

1. WILLS (§ 456*)—CONSTRUCTION OF WORDS.
    If giving the words used in a will their primary signification will render the will not sensible or absurd, such meaning will not be followed.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 974; Dec. Dig. § 456.*]

2. WILLS (§ 466*)—CONSTRUCTION—"EXECUTION."
    A wife bequeathed and devised all her property to her four children; the will providing that in case any of the four children should die, leaving no descendants, before the "execution of this, my last will and testament, I direct that my property of every description be divided among my then surviving children." In the same paragraph of the will, speaking of the subject of her gift, testator used the words "at the time of my death." Held, that under the circumstances the word "execution" would be construed to refer to the time when the provisions of the will were actually carried into effect and the estate distributed.
    [Ed. Note.—For other cases, see Wills, Dec. Dig. § 466.*
    For other definitions, see Words and Phrases, vol. 3, p. 2564; vol. 8, p. 7656.]

Appeal from Surrogate's Court, Westchester County.

Proceedings for the settlement of the accounts of Edward B. Kear, as executor of the estate of Maria D. Reynolds. From a decree rendered, Elizabeth Reynolds and others appeal. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and MILLER, JJ.

Charles H. Banks, for appellants.
Charles C. Fenno, for respondents.

BURR, J. Maria D. Reynolds died March 21, 1905. She left a will dated July 23, 1904. It was admitted to probate April 17, 1905. She left surviving her husband, Lockwood Reynolds, and four children, Elizabeth Reynolds, Josephine Kear, Florence Reynolds, and Charles Reynolds. Her will read as follows:

"All of my estate whatsoever which I may own or be entitled to dispose of at the time of my death, of what nature, kind and title soever, the same may be, I give and bequeath to my four children Elizabeth, Josephine (wife of Edward B. Kear), Florence and Charles Reynolds to be divided among them share and share alike, and in case any of my children above named should die leaving no descendant before the execution of this my last will and testament, I direct that my property of every description be divided among my then surviving children share and share alike."

She appointed her son-in-law, Edward B. Kear, as executor. Florence Reynolds died October 24, 1905, unmarried and intestate. Letters of administration were issued to her father, Lockwood Reynolds. At that time the estate had not been settled nor distributed. On August 17, 1906, the executor filed his application for a judicial settlement of his account. From his account it appeared that he had received personal estate to the amount of about $3,000, and that $546.65 had been expended in the payment of funeral and testamentary expenses, and that a loss had been sustained upon certain sales made below the inventory price. He had a balance in his hands amounting to $2,450.99. The question arose as to one-quarter of this amount which would have been payable to Florence Reynolds if she had been then living. Her surviving sisters claimed that it belonged to them; her father that he was entitled to it as her administrator.

The solution of this question depends upon the construction to be given to the words "before the execution of this my last will and testament." What point of time did the testatrix mean to thereby designate? One construction would be that she meant when she signed and published her will, and that may be deemed to be the primary signification of the words; but if giving words their primary signification will render a will not sensible or absurd, such meaning will not be followed. 1 Redfield on Wills (4th Ed.) 468. At the time the testatrix signed and published her will, she knew that neither of the four children named therein had died. It would be absurd therefore to suppose that she was providing for a condition of affairs which she knew could never arise. Two other constructions are possible, one of which will fix the period of time referred to as that of her death, when the will became operative, and the other as that when the provisions of the will are actually carried into effect and the estate is distributed thereunder. Under the circumstances disclosed in this case, we are inclined to think that the learned surrogate was right when he determined the latter to be the true meaning of the clause in question. In the same paragraph of the will, speaking of the subject of her gift,

she had used the words "at the time of my death." If she had intended to refer to the same point of time in the clause in question, it is more reasonable to suppose that she would have made use of the same words and said, "in case at the time of my death any of my children above named have died leaving no descendant," rather than have adopted the awkward phrase "before the execution of this my last will and testament." A will is not in all respects a self-executing instrument, and the majority of people have the idea that it does not execute itself at all. Again, she seems to have been unwilling, for some reason, to permit her husband to have anything to do with her estate, either in the settlement thereof or as a beneficiary thereunder, for she not only fails· to make him an object of her bounty, but she passes him by and selects her son-in-law to administer the same.

In Scott v. Guernsey, 60 Barb. 163, the testator gave certain land to his daughter, Polly Guernsey, for her life, and then said that upon her death it was "to be equally divided amongst her now surviving children, or any of them that may be alive at her decease, or the heirs of any that may be dead at the time of executing this my last will." Polly Guernsey had a daughter, Polly Thompson, who died before her mother, leaving children, and they claimed an interest in the said estate. The court held the claim well founded and said:

"What, then, did the testator mean by the words 'at the time of executing this my last will'? If he meant the time of signing and publishing it, the Thompson heirs cannot come in under the devise, for their mother was not then dead, and they were not then born. * * * I think that this could not have been his meaning. The language may have another meaning, to wit, the carrying into effect the provisions of the will. 'To carry into effect' is one of the definitions of the word 'execute.' Hence the word 'executor' means, according to Worcester, citing Burrill, 'one who is appointed by a testator, in his last will and testament, to see and take care that it is executed, or carried into effect, after his decease.' It was executing, in this sense, that the testator meant."

This case was affirmed in the Commission of Appeals, 48 N. Y. 106. In the opinion in that court it was held that it was unnecessary to decide whether the will referred to the time of the death of the testator or of Mrs. Guernsey as the time of executing the will, since under either construction the will was effectual to save the inheritance of the mother's share to the children of Polly Thompson. If it be urged that the will under consideration was a will of real as well as personal property, and that executors have nothing to do with real property devised under a will, we may again quote from the opinion:

"It is possible that the testator ignorantly believed that his executors had something to do about 'executing' the will, as to this land as well as to the 'movables' of his estate, and that he referred to the time of the execution of their duties."

While it is true that in this case the court held that the time of executing the will meant the time when the estate vested in possession, it is quite clear that if the circumstances had required the court to hold, in order to sustain the plaintiff's claim, that it referred to the time when the executors discharged their duty, it would have been prepared to so hold.

In Lambert v. Harvey, 100 Ill. 338, the will gave the testator's estate to his wife for life. It then directed that, as soon after her death as it might conveniently and advantageously be done, all property be sold, and after defraying the expenses of executing the will that a legacy of $1,000 be paid to one daughter, and the remainder of the estate be given to another daughter, Catharine S. Harvey. The testator added:

"If my daughter Catharine shall not be living at the time this will shall be executed, I direct that which is herein bequeathed to her shall be given to her daughter Alma Harvey."

The court say:

"By the expression 'at the time this will shall be executed,' the testator evidently refers to the time of converting the estate into money and distributing it under the will, which could not be done until after the widow's death, and whether Mrs. Harvey or her daughter would take at this time depended entirely upon the contingency already stated."

In the case of In re Lamb's Estate, 122 Mich. 239, 80 N. W. 1081, the testator gave all her real and personal estate to her brothers and sisters, to be equally divided between them, share and share alike. The testator then added:

"But in case of the death of any of the above-named legatees previous to the probating or execution of this, my last will and testament, then I desire, will, and bequeath that the share of such deceased brother or sister shall revert to, and become the property of, the children of said deceased legatee."

The testator died April 3, 1898. Her will was admitted to probate, and letters testamentary were granted June 13, 1898. One of her brothers died December 18, 1898, before the distribution of the estate. During his lifetime he assigned to his wife all his interest thereunder. He left two children. Upon the settlement of the executor's accounts the question arose whether the share which would have gone to the deceased brother if he had been living passed under his assignment to his wife, or went to his children under the will. The court held that the children took it. In its opinion the court say:

"Manifestly, the term 'execution' does not apply to the act of signing and publishing her will. It refers to something to be done after her decease. * * * To probate a will is not to execute it. To probate involves only a determination that the will was duly signed and published, and that the testator was competent to make it. It simply establishes the validity of the will. Its execution comes after its probate. The executor is the person appointed to 'carry the will into effect or execution after his decease, and to dispose of his property according to the tenor of the will.' 1 Burrill, Law Dict. 584. * * * The term 'execution' was, in our judgment, used with reference to the act of the executor in executing the will by settlement of the estate under the provisions of law for the settlement of estates of deceased persons, and distributing the property to her legatees."

The question is not free from doubt; but, under all the circumstances of the case, we are of the opinion that it was correctly decided by the court below, and we think that the judgment appealed from should be affirmed, with costs. All concur.