WILLIAM POWERS, MAUDIE SMITH, LILLIE DUNAWAY, DEWEY LEATH, VIRGIE JONES AND BENNIE WALRAVEN, (PLAINTIFFS), RESPONDENTS, v. GRAND LODGE OF ANCIENT, FREE AND ACCEPTED MASONS OF THE STATE OF MISSOURI, A CORPORATION, THE MASONIC HOME OF MISSOURI, A CORPORATION; THE GRAND LODGE OF INDEPENDENT ORDER OF ODD FELLOWS OF THE STATE OF MISSOURI, (DEFENDANTS), APPELLANTS.—177 S. W. (2d) 529.

Springfield Court of Appeals, January 6, 1944.

Rehearing denied January 27, 1944.

*J. M. Haw, James Haw, H. A. Hamilton* and *C. R. Hamilton* for appellants.

*Zal B. Harrison* and *Hal B. McHaney* for respondents.

SMITH, J.—This is the second time this case has been appealed to this court. The first appeal is reported in 146 S. W. (2d) 895. The petition in this case is the same as in the former appeal. The petition, with the will attached, was set out in full in the former opinion and we do not set them out in full here. We held then, that the petition stated a good cause and was not barred by the ten-year Statute of Limitation.

When the cause went back to the circuit court, answers of the defendants were filed and a trial upon the then pleadings was had.

The plaintiffs are William Powers and the heirs at law of Clarinda Powers. The said William Powers and Clarinda Powers are two of the beneficiaries under the last will and testament of J. Logan Busby.

Plaintiffs' action is to establish an implied trust in the lands devised by the testator and described in his will, sufficient to secure payment of the amount now claimed to be due plaintiffs.

The record title to the lands in question is now in the Masonic Home of Missouri, the corporate name of the orphan's home of the Masonic Lodge. Under the admitted facts, the Masonic Home holds title for itself and also the Independent Order of Odd Fellows, the other residuary devisee.

The pertinent parts of the last will and testament of J. Logan Busby involved in this controversy are, as follows:

"I, J. Logan Busby of Mississippi County, Missouri, do make and publish this my last will and testament, hereby revoking all former wills by me made.

"First: I direct that my executor hereinafter named, dispose of all personal property which I may own at the time of my death, and that the proceeds arising from said sale and from the Collection of any insurance policies which I may have on my life, be used as follows:

"A. I direct that all my just debts of whatever kind be paid.

"B. I will and direct that I be buried in the lot now owned by me in the I. O. O. F. Cemetery and beside my mother, and at the time of my death, should there be no monument erected on said lot, I direct that my executor shall erect a monument of such design as he or they may select, of the best dark grey granite, said monument to cost not less than five hundred ($500.00) dollars and such further sum as my said executor may deem advisable.

"C. I direct that my said executor or executors, next pay to my son, Ben F. Busby, the sum of one hundred ($100.00) Dollars.

"D. Should there be any money left from the sale of my personal property, or insurance policies above mentioned, after paying the debts, erecting the monument and paying the specific legacy to my son Ben F. Busby, as above mentioned, I direct my said executor to pay all of said balance upon any debts that I may owe, secured by mortgage on my real estate.

"Second: I will and direct that all of my real estate particularly described as follows, to-wit:

"The east half of the southeast quarter and the southwest quarter of the southeast quarter, and that part of the southeast quarter of the southwest quarter which lies east of Black Bayou, all in Section thirty-one (31) Township Twenty-five (25) Range Sixteen (16), and that part of the northeast quarter of Section Six (6) Township Twenty-four (24) Range Sixteen (16) which lies north of East Bayou, all in Mississippi County, Missouri, be held and managed by my executor hereinafter mentioned for a term of five (5) years, under the direction of the Probate Court of Mississippi County, Missouri, they to make only annual settlements with said court, after the first year, and I hereby direct my said executor to pay the net proceeds from the rents of my said lands, after paying taxes, cost of management, interest on mortgage debts, and the additional legacy hereinafter given to my son, Ben F. Busby, upon the principal of any mortgage which I may then owe; and I hereby expressly direct and empower my said executor to renew, if necessary, any mortgages which may be on my said land at the time of my death to the best advantage of my estate, said renewal to bear not exceeding six per cent interest and for a term not longer than five years, and for their services in making said renewal they are to be allowed twenty dollars. It being my will that no part of my real estate be sold unless it becomes necessary to do so to pay the mortgage debts. I will and direct that if in the judgment of my said executor, the net rents will not fully pay off the mortgage debts within five years, then he shall during the last year of said five year period, sell that part of the southeast quarter of the southwest quarter lying east of Black Bayou of Section thirty-one (31) and the southwest quarter of the southeast quarter of said Section thirty-one (31) all in Township Twenty-five (25) Range (16) in Mississippi County, Missouri, or so much thereof as may be necessary to pay off all the remaining mortgage debt, first selling the tract first mentioned, the one next to Black Bayou, so as to leave the farm in more compact condition; and for the purpose aforesaid I hereby direct and empower my said executor, to make said sale by private or public sale as he may think proper, and to execute sufficient deeds of conveyance to the same and to apply the proceeds to the discharge of said mortgage debt.

"Third: I hereby direct my executor to pay to my son, Ben F. Busby, the sum of one hundred ($100.00) Dollars per annum out of the rents of my real estate, provided there be sufficient to do so after paying interest, insurance, taxes and other necessary expense, if not he is to have whatever may be left, not to exceed one hundred dollars, and in case my said son shall become sick and be in need and distress, he shall pay him such sum as may be necessary to relieve his immediate needs, but in that event, my said executor is to be the sole judge of the necessity and of the amount and from his decision there shall be no appeal.

"Fourth: At the expiration of five years from the date of my death, I will, devise and bequeath to John L. Vaughn, all my real estate at time undisposed of to have and to hold in trust for a term of and during the natural life of my son, Ben F. Busby, and direct that he rent and lease the same, pay all taxes, insurance and necessary repairs, and pay over the net income and rents to my said son, Ben F. Busby, to dispose of as he sees fit, and in case of the death of said John L. Vaughn, during the life of my said son, then O. W. Joslyn of Charleston, Missouri, is hereby appointed to succeed him as such trustee with the same powers and restrictions, and in the event of the death of said O. W. Joslyn, either before the death of said Vaughn and before the death of my said son, or in case of the refusal of either of said trustees to act, then the presiding judge of the Circuit Court of Mississippi County, Mo., shall appoint a suitable trustee with the same powers said trustee shall be required to give a sufficient bond to be approved by said circuit judge, and shall be allowed to retain as compensation out of said rents the sum of fifty dollars per annum for his services; this condition is to apply to the trustee, whether appointed by me herein, or by the circuit judge, and at the time of my son's death, I hereby will and direct the fee simple of all my estate to vest in the Grand Lodges of the Independent Order of Odd Fellows, and of the Ancient, Free and Accepted Masons of the State of Missouri, share and share alike, to be by them sold and disposed of and the proceeds placed at interest as an endowment fund for the Orphans home of those two orders; subject, however, to the following charges; They shall pay to my nephew, William Powers and Niece Clarinda Powers of near Blytheville, Arkansas, the sum of One Thousand ($1,000) Dollars each and if they be not living at the time to pay the same to their heirs.

"Fifth: I hereby appoint John L. Vaughn of Charleston, Mo., as my executor, or in case of his death, inability or refusal to act, O. W. Joslyn of Charleston, Mo., and in case both of said parties should die or for any reason be unable to act, I direct that the probate court of Mississippi County, Missouri, appoint some suitable person to act in their stead.

832

"In witness whereof I have hereunto set my hand this 12th day of February, 1916.

J. LOGAN BUSBY"

Ben F. Busby, the son of J. Logan Busby, died on the 4th day of July, 1931.

The estate of J. Logan Busby was duly administered in the probate court of Mississippi County, Missouri and all special bequests other than the bequests to plaintiffs were paid by the executor, except a part of the principal debt owing to the Prudential Insurance Company, secured by a deed of trust upon the lands involved in this controversy, and which was the mortgage debt mentioned in the will of J. Logan Busby.

At the time of the death of the testator, the Prudential Insurance Company debt amounted to $7500. The executor of the estate reduced the principal indebtedness by payments to $3100 as of March 25, 1922. On the 26th day of January, 1922; the Prudential Insurance Company transferred the J. Logan Busby note and deed of trust to the Grand Lodge of Missouri, Independent Order of Odd Fellows and the Masonic Home of Missouri by its endorsement without recourse.

The executor and trustee failed to sell that part of the property owned by the testator as specified in the will for the purpose of liquidating and discharging the mortgage debt owing to the Prudential Insurance Company of America. The will provided this property was to be sold during the fifth year subsequent to the death of J. Logan Busby.

The identity of plaintiff, William Powers, as one of the beneficiaries under the last will of J. Logan Busby is not disputed. Likewise it is undisputed that plaintiffs, Maudie Smith, Lillie Dunaway, Dewey Leath, Virgie Jones and Bennie Walraven are the sole heirs at law of Clarinda Powers who died intestate in the State of Arkansas.

The joint answer of the Masonic Home of Missouri, a Corporation, and The Grand Lodge of The Independent Order of Odd Fellows of the State of Missouri, filed in this case is, caption and signature omitted, as follows:

"Now come defendants, Masonic Home of Missouri, a corporation, and The Grand Lodge of Independent Order of Odd Fellows of the State of Missouri, and for their answer to the petition of plaintiffs in the above-entitled cause admit the execution by J. Logan Busby of the will set out in the petition, his death and the probate of said will, the existence of the deed of trust to secure the principal debt of $7500 on the real estate in said petition dscribed, the appointment of O. W. Joslyn as executor-trustee of said will, and that Ben F. Busby died in July, 1932, and deny generally all other allegations in plaintiffs' petition contained and pray that plaintiffs' petition be

dismissed and these defendants be hence discharged with their costs in this behalf expended.

"Further answering these defendants say that the deed of trust described in said will and in the petition herein was given to secure not only the principal sum of $7500 therein mentioned, but the payment of the interest on said principal sum, taxes and benefit assessments on said lands, and the expenses of keeping the improvements thereon insured, all as provided in said deed of trust; that at the time of the execution and probate of said will there was a second deed of trust given to secure a note for $500, dated December 16, 1912, bearing interest from date at the rate of 8 per cent per annum, payable annually, recorded in Book 67 at Page 176 in the office of the Recorder of Mississippi County, Missouri, and a large number of other debts and obligations against said estate, all of which had to be paid before the plaintiffs or any of the beneficiaries in said will could acquire an interest in the estate of said J. Logan Busby.

"Further answering, these defendants allege and aver that the aforesaid deed of trust held by the Prudential Insurance Company of America was due and payable December 5, 1921; that the executor-trustee of said estate, using all the available funds in his hands at that time, reduced said $7500 note to the Prudential Insurance Company of America to $4500, and under and by virtue of an order of the Probate Court of Mississippi County, Missouri, entered into an agreement with said Prudential Insurance Company of America whereby the time for paying the balance of $4500 with interest thereon from December 5, 1916, was extended to December 5, 1921; that at the time when under the terms and conditions of said will the executor-trustee was directed to sell said real estate during the five years subsequent to the death of testator or in the year commencing on the first day of March, 1921, it was impossible for said executor-trustee to make a sale of the lands described in said will, or any part thereof, in the manner and for the purpose provided in said will, there being at that time and for many years afterwards, in fact until long after the foreclosure of said deed of trust, December 17, 1932, no market for such lands due to a severe and prolonged depression, during which farm lands, including the lands described in plaintiffs' petition had no sale value, but, on the contrary, farm lands generally were being sold under deed of trust foreclosures and tax judgments and bringing less than the debts against them and that the crops produced on such lands were selling for less than the cost of production; that during said depression said executor-trustee frequently paid out more to prevent said land from selling for delinquent taxes and benefit assessments and for interest due on the deeds of trust thereon than he received from said premises, and at many of the annual settlements of said estate there was a balance due the executor over and above the amounts received by him; that on the 26th day of January, 1922, the

said deed of trust to the Prudential Insurance Company of America was past due and to prevent foreclosure thereon, these defendants, on the advice of the executor-trustee of the estate of J. Logan Busby, deceased, for value received purchased said note and deed of trust securing same from the Prudential Insurance Company of America, and both said note and said deed of trust were then assigned by said Prudential Insurance Company of America to these defendants, who held the same, and still hold the same, on which there is a balance yet due and unpaid; that these defendants, in November, 1932, after the death of Ben F. Busby, son of said J. Logan Busby, requested James A. Boone, the substitute trustee in the deed of trust executed to and formerly held by the Prudential Insurance Company of America, to foreclose said deed of trust, which he accordingly did, selling said real estate thereunder December 17, 1932, and on the same day executed his deed as such trustee to defendant, Masonic Home of Missouri, a corporation, it being the highest and best bidder at said sale and the purchaser thereat for the consideration of $1000; that said sale was in all respects regular and fairly conducted, and that defendant Masonic Home of Missouri, a corporation, became the *bona-fide* purchaser thereat and is, and ever since has been, the owner and holder of the legal title to all of said real estate.

"These defendants deny that the claims of plaintiffs under said will are, or ever were, a charge upon said real estate and state that the provisions of said will are of no force or effect as to these lands, title thereto being held under and by virtue of a valid, legal foreclosure under the. aforesaid deed of trust to the Prudential Insurance Company of America, executed by the testator in his lifetime.

"Wherefore, these defendants pray that the petition of plaintiffs herein be dismissed, that the Masonic Home of Missouri, a corporation, be declared to be the owner in fee of said real estate free from all liens, charges and claims on behalf of the plaintiffs and each of them, that said plaintiffs be adjudged to pay the costs herein, and for such other further and general relief as to the court may seem meet and proper."

The Grand Lodge of Ancient, Free and Accepted Masons of the State of Missouri, a corporation, answered as follows: caption and signature omitted:

"Now comes the Grand Lodge of Ancient, Free and Accepted Masons of the State of Missouri, a. corporation, one of the above-named defendants, and for its separate answer to the petition of plaintiffs herein admits that it and its codefendants are corporations, admits the execution by J. Logan Busby of the will set out in the petition, his death and the probate of said will, the existence of the deed of trust to secure the prncipal debt of $7500 on the real estate in the petition described, the appointment of O. W. Joslyn as executor-trustee of said estate, and that Ben F. Busby died in July, 1932, all as

in said petition alleged, and denies generally all other allegations in said petition contained.

"Wherefore, this defendant prays that plaintiffs' bill be dismissed and that it be hence discharged with its costs in this behalf expended."

The cause was tried and the testimony submitted to the Court on the 29th day of June, 1942, and was by the court taken under advisement until the 25th day of January, 1943, on which date a decree of the court was rendered in favor of plaintiffs, which decree, caption omitted, we quote as follows:

"Now on this 25th day of January, 1943, this cause having come on to be heard upon the pleadings herein and the proof taken therein, and having been argued by counsel for the respective parties and the court having duly considered the same, doth find that under the last will and testament of J. Logan Busby, plaintiff, William Powers, was named as a legatee and was entitled to receive the sum of One Thousand ($1,000.00) Dollars; that plaintiffs, Maudie Smith, Lillie Dunaway, Dewey Leath, Virgie Jones and Bennie Walraven are the sole surviving heirs at law of Clarinda Powers, who was named as a legatee in the last will and testament of J. Logan Busby and who was also bequeathed the sum of One Thousand ($1,000.00) Dollars under the said last will and testament, and as such surviving heirs at law are entitled to receive the legacy of the said Clarinda Powers.

"The court doth further find that defendant, Masonic Home of Missouri, a corporation, holds the legal title in and to the following described premises, located and situated in Mississippi County, Missouri, to-wit: (Same description as quoted in the Will above.) By reason of a purported foreclosure of a deed of trust held by the said Masonic Home of Missouri, a corporation, and the Grand Lodge of Independent Order of Odd Fellows of the State of Missouri, which said deed of trust had been purchased or paid by the said Masonic Home of Missouri, a corporation, and the said Grand Lodge of Independent Order of Odd Fellows of the State of Missouri, subsequent to the death of J. Logan Busby; that at the time of said purchase the defendants aforesaid were respectively the Orphans' Homes of the Grand Lodges of the Ancient, Free and Accepted Masons of the State of Missouri and the Independent Order of Odd Fellows, and as such were the residuary devisees under the last will and testament of J. Logan Busby, deceased, subject to the charges against said estate in favor of William Powers and Clarinda Powers in the sum of One Thousand ($1,000.00) Dollars each.

"The court doth further find that under the last will and testament of J. Logan Busby, the beneficial interest of the residuary legatees and devisees and of the said William Powers and Clarinda Powers were subject to the life estate of Ben F. Busby, that Ben F. Busby died July 4, 1931; that on said date it was the duty of defendants, Masonic Home of Missouri and Independent Order of Odd Fellows

to have sold the lands aforesaid and to have paid the charges against said estate and the lands herein described in favor of William Powers and Clarinda Powers but contrary to the terms of said will, said lands were not sold as in said will directed and the legacies aforesaid were not paid but, thereupon, defendants, Masonic Home of Missouri, a corporation, went into possession of said lands for itself and the Grand Lodge of Independent Order of Odd Fellows and collected the rents and profits from said lands and thereafter, on the 17th day of December, 1932, foreclosed the deed of trust aforesaid and at said sale purchased said lands and since said sale, Masonic Home of Missouri has held title to said lands under an agreement with defendant, Independent Order of Odd Fellows of the State of Missouri for the benefit of itself and said defendant and has collected all rents and profits from said lands from said date for the benefit of itself and said defendant.

"The court doth further find that said foreclosure sale was null and void in so far as plaintiffs herein are concerned; that the defendants by their acts aforesaid obligated themselves to pay plaintiffs the charges against said lands aforesaid with the interest thereon from the date of said purported foreclosure and that plaintiffs are entitled to have declared a special lien against the lands aforesaid sufficient to secure the payment thereof.

"The court doth thereupon order, adjudge and decree that plaintiff William Powers, have judgment in the sum of One Thousand Six Hundred and Five Dollars ($1,605.00) and that plaintiffs, Maudie Smith, Lillie Dunaway, Dewey Leath, Virgie Jones, and Bennie Walraven have judgment in the sum of One Thousand Six Hundred and Five Dollars ($1,605.00) and that said judgment bear interest at the rate of 6% per annum from the date hereof until paid and that a special lien be declared against the lands herein described sufficient to secure the full payment of said judgment and interest.

"Be it further ordered and adjudged that plaintiffs have and recover of the defendants their costs in this behalf expended and that special execution be issued herein therefor."

Motion for new trial was filed and overruled, and in due time an appeal to this court was had.

The case is presented to us under four assignments of error, which we consider, and because these assignments can all be considered together, we set them out as follows:

"1. The lower court erred in finding and adjudging that the foreclosure of the deed of trust, owned by Masonic Home of Missouri and Grand Lodge of Missouri, I. O. O. F., was null and void as to plaintiffs, because the said deed of trust and the note secured thereby were valid and subsisting obligations and constituted the paramount claim and title to the land, superior to any rights derived through the will of J. Logan Busby.

"2. The lower court erred in finding and adjudging that appellants went into possession of the land upon the death of the life tenant, Ben F. Busby, and collected the income thereof and thereby became obligated to pay the conditional legacies provided for plaintiffs by the will of J. Logan Busby, because said finding of fact is contrary to the evidence and is not supported by any evidence, and, even if true, the appellants had the legal right to said possession and income as the owners of the deed of trust in default and after condition broken.

"3. The lower court erred in finding and adjudging that plaintiffs had any right, interest or claim in or to the land devised by the will of J. Logan Busby, because at the time of executing said will, and at the time of his death, J. Logan Busby owned only an equity in re-demption in the land. Said land was encumbered by a deed of trust executed by J. Logan Busby in his lifetime, and all of the devises and charges upon the land created by the will were subject and inferior to the rights of those derived by foreclosure of the deed of trust.

"4. The lower court erred in finding and adjudging that plaintiffs were entitled to any relief, because upon the undisputed and established facts in this cause, and upon the applicable law, the judgment below should have been in favor of defendants."

There is not much controversy over the facts in this case. J. Logan Busby was the owner of the farm in question, and on December 5, 1911 executed a deed of trust conveying said farm to the Commonwealth Trust Company, trustee for the Prudential Insurance Company of America, to secure a note of that date in the sum of $7500 due and payable five years after date. On February 12, 1916, J. Logan Busby executed his last will and testament. and died within a month thereafter. He recognized the deed of trust which he had given, for he authorized his executor, if necessary, to renew the deed of trust for a period of five years. There is no question but that the original deed of trust was executed prior to the execution of his will. The executor was directed to collect and receive all the rents and income from said farm and after paying taxes, insurance, interest and other expenses, to pay to Testator's son, Ben F. Busby, the sum of $100 per year, and to use whatever remained in discharging the note secured by the deed of trust.

O. W. Joslyn, the duly qualified executor of the will, under authority of the will, on December 5, 1916, extended the time of payment of the $7500 note to December 5, 1921. The executor continued to manage and control the farm, and on January 22, 1917, had paid on the principal of said note $3000, thus reducing the same to $4500. On December 10, 1918, he made another payment of $1400 on said note, reducing the principal at that time to $3100. He paid the interest annually up to and including interest due December 5, 1921, on which date the principal of said note was also due.

The testimony shows that during the five-year period ending December 5, 1921, land values in Mississippi County had become so low and depressed, that it was impossible to sell the same, and the executor found that he could not sell the portions of the farm he was authorized to sell and realize anything like the amount necessary to pay the balance still due on the note held by the Prudential Insurance Company of America.

The testimony shows that in view of the period of depression, it was decided that the Grand Lodge of Missouri I. O. O. F. and the Masonic Home of Missouri would each contribute one-half of the amount necessary to purchase the note held by the Prudential Insurance Company, which was done, and the Insurance Company transferred the note by endorsement to the Masonic Home and the Grand Lodge of Missouri I. O. O. F. in January, 1922. We think the evidence shows clearly a purchase of the note, for the evidence shows that O. W. Joslyn, Trustee, on November 29, 1922, paid $100 on the principal of this note to the then holders and on January 24, 1924 paid $200 on the principal, reducing the principal to $2800, and paid the interest thereon to 1925.

The evidence shows that on or about October 19, 1932, James A. Boone was appointed by the Circuit Court of Mississippi County, Missouri, as trustee under the deed of trust instead of the Commonwealth Trust Company, and on October 25, 1932, he was ordered to advertise the property for sale under the terms of the deed of trust. Such notice of proposed sale was published, fixing the date of sale on December 17, 1932. On that date the foreclosure sale was made and a deed to the property was made to the Masonic Home of Missouri. Did this sale foreclose the interest, if any, that the plaintiffs had in this property? Or, to express it otherwise, since the deed of trust and note were executed and delivered prior to the execution of the will, does the foreclosure under the deed of trust eliminate or remove any claim of the plaintiff's under the will? Or to express it still differently, did the foreclosure under the facts as disclosed in this case, wherein one of the beneficiaries under the will purchased under the foreclosure sale, foreclose the other beneficiaries under the will?

It is shown by the evidence that the plaintiffs in this case had no knowledge of the death of Ben F. Busby, nor did they know of the foreclosure of the deed of trust until some time after the foreclosure.

It is also shown that the executor under the will did not sell the portion of the farm designated in the will to be sold to pay off the deed of trust on the farm. It is shown under the evidence, and not contradicted in any way, that the reason the land was not sold was because of an extended depression in Southeast Missouri, and that the land could not be sold for nearly enough to pay off the deed of trust. There was no evidence offered to the effect that the part of the lands desig-

nated to be sold could have been sold and the encumbrance paid off up to the time suit was filed in this case.

As we understand the procedure, it is our duty in equity cases to make our own findings and render such judgment as equity and justice require. [Uhrig et al. v. Hill-Behan Lumber Co. (Mo. Sup.), 110 S. W. (2d) 412, 418; De Mayo v. Cantley, Com. of Finance et al. (Mo. App.), 141 S. W. (2d) 248.]

As we read the will quoted in this case, the testator by express terms directed the Grand Lodge of Ancient, Free and Accepted Masons of Missouri and the Independent Order of Odd Fellows of Missouri to pay to plaintiffs the charges in question. The will directed that the lands be sold by these Grand Lodges and after these charges were paid, the remainder was to be used by the Orphan's Homes of these Grand Lodges.

Without extending this opinion too long, it is our conclusion that the will shows, and the evidence offered shows, that it was the intent of the testator that the realty designated in his will was by said will converted into personalty. This is true because there was a positive direction to sell, and an absolute necessity to sell in order to carry out the terms of the will. We are sustained in this conclusion by the following cases: Ganahl v. Ganahl (Mo. Sup.), 19 S. W. (2d) 898; In re McElevey's Estate (Mo. Sup.), 266 S. W. 123, and Wyatt v. Stillman Institute (Mo. Sup.), 260 S. W. 73.] Some of these cases also hold that an estate is not fully administered until nothing remains to be done to carry out the intent of the testator according to the terms of the will.

This will provided that this property should be sold by these Grand Lodges; it has not been so sold yet. It is our conclusion that it must be so sold by these Lodges, unless it is not necessary to sell because the rights of the plaintiffs were cut off by the foreclosure of the deed of trust, a question we shall hereinafter discuss.

The Lodges now claim that they are holding under the foreclosure sale and not under the will or any provisions of the will. The evidence shows that they were primarily interested in the property because of the provisions of the will. Their representatives investigated this property, and the evidence shows that under usual and ordinary conditions, this property was worth more than the indebtedness against it and the charges placed against it by the will in favor of these plaintiffs. There was nothing done to show in any way that they had to take under the will, nor was there anything done to cause them to buy the note secured by the deed of trust. The purchase of this note and deed of trust was because they thought by so doing, they would be safe in that investment and would obtain something for themselves out of the testator's property; the evidence shows by the correspondence offered that they knew of this express provision in the will, for the benefit of the plaintiffs. The evidence tends to show that

they bought this note under the impression that this charge in favor of the plaintiffs would have to be protected. This note was purchased several years before it was foreclosed. The deed of trust was finally foreclosed and the land bought in by the Lodges at the sale. The plaintiffs had no knowledge of the foreclosure sale. We are forced to the conclusion that even though there was a foreclosure sale, that these purchasers were in a measure prompted to buy at said sale in order to try to close out any interest the plaintiffs may have had under the will, and that by so doing they created themselves trustees holding an interest in the property for the plaintiffs, and that the plaintiffs are entitled to an equitable share of this property. But if the plaintiffs are entitled to equity, they must be willing to do equity.

These defendants paid out some of their money for that note and deed of trust. If they had not done so, the plaintiffs might have lost all their interest under the will. We think they would have lost if some disinterested third party had bought the land at the foreclosure sale. The defendants paid for the note $3130, and by so doing kept the lands from going to innocent third parties. Equity demands that in fixing charges against this land or these funds, this amount should be considered as well as the charge in favor of the plaintiffs.

It is our conclusion that this land will yet have to be sold and reduced to cash as in the will directed, and we reverse and remand this case with direction that the circuit court direct the defendants, or some trustee appointed by the circuit court, to sell this land for cash. Since the evidence in this case shows that the defendants collected or had their agent collect certain rents and income from the farm, and paid out some for taxes, improvements, etc., during the years after the foreclosure sale, there should be an accounting for those years, to determine if more was collected than paid out, or more paid out than was received. The result of this accounting would either add to or take from the amount to be accounted for from the sale of this farm. Out of the proceeds from the sale of this farm and the adjustment of collections and expenditures last above mentioned, there should be first paid to the defendants, Grand Lodges, the amount paid out by them, to-wit, $3130 with six per cent interest from the date of purchase of said notes and, if there be sufficient funds, next to pay to the plaintiffs their claim of $2000 with interest at six per cent from two years after the death of Ben F. Busby on July 4, 1931. This two-year period would be reasonable time for the defendants to have sold the lands and paid the plaintiffs, and if there be any remaining after paying plaintiffs, then the remainder to go to the defendants, Grand Lodges, for the benefit of their Orphans' Homes as in the will provided. It is so ordered. *Blair, P. J.,* concurs; *Fulbright, J.,* not sitting.