FRED W. HOGG, ROBERT V. HOGG, and FRANCES HOGG ANDERSON, Respondents, v. BESS CONN FALK, Appellant, No. 41301—225 S. W. (2d) 756.

Division One, December 13, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, January 9, 1950.

*Charles E. Rendlen* and *Rendlen, White & Rendlen* for appellant.

1106

*Roy Hamlin, Long & McIlroy* and *F. D. Wilkins* for respondents.

1108

BRADLEY, C.—This cause was commenced as an action to partition about 733 acres of land in Ralls County, but by the pleadings under which the cause was finally tried the construction of the will of Agnes R. Hogg, who owned the land at the time of her death, became the decisive question. The trial court denied partition, held that the will required that the land be sold, and that the proceeds, after payment of debts, legacies, and expenses, be divided equally between plaintiffs on the one hand and defendant on the other. Defendant, contending that plaintiffs had no interest in the estate, appealed. The amount in dispute gives the supreme court jurisdiction of the appeal.

Arthur W. Hogg and Agnes Rector were married November 22, 1916. Each had been previously married, and Agnes owned the land at the time of the marriage and at the time of her death, as stated. Arthur W. had three children, respondents here, by a former marriage; Mrs. Hogg died testate July 15, 1945, without descendants; Mr. Hogg and appellant were named executors in the will which was executed October 31, 1939; Mr. Hogg died April 22, 1946. Appellant is a niece of Mrs. Hogg and was reared by her from the time she (appellant) was 3 years old and until she married, and she was in the home of Mrs. Hogg much of the time after her (appellant's) marriage.

Following is the will. The items involved are set out in full; the substance of the others is stated.

Item 1. I direct that all my just debts, my funeral expenses and the cost (not exceeding five hundred dollars) of the purchase and erection of a monument at my grave, which will be on my lot in Barkley cemetery, shall first be paid by my executors,

hereinafter named, out of my personal assets so far as may be done, before resort may be made to the sale of any of my lands therefor.

Item 2. I give and bequeath to my husband, Arthur W. Hogg, one-half of my estate, other than the specific bequests hereinafter set forth, and after item one is executed, according to his dower right as surviving widower under the laws of Missouri. If said Arthur W. Hogg should die before this will is *executed,* his dower and bequest shall remain a part of my estate and be disposed of as hereinafter directed (italics ours).

Item 3. To my niece, Bess Conn Falk, whom I brought up from childhood and whom I love as a daughter, I give and bequeath my residence property situated in New London, Missouri; the aforesaid being lots thirty-seven (37) and thirty-eight (38) in block twelve (12) and being south half of said block, to have and to hold in fee simple absolute; my household furniture, linens, pictures and all other articles and effects in my said residence, except articles hereinafter specifically bequeathed. To the said Bess Conn Falk I bequeath the tract of land commonly known in the family as the depot field, it being that part of (here follows description).

Item 4. For my niece and namesake Agnes Hays Ferguson, I direct my executors to pay for her one five-hundred-fifty-dollar ($550.00) promissory note of hers, held by the Hannibal National Bank, and bearing my signature as security. If the above said note shall have been paid before this will is *executed,* then I direct my executors to give her the above amount of the note in cash. * * * (italics ours).

Item 5 devised to a great niece certain personal property and two lots in Port Isabel, Texas.

Item 6. If any legatee or devisee herein die before my death, then in the absence of any other provision, I give the legacy or bequest intended for him or her to his or her heirs at law, except the legacy as stated in item two (2) and item four (4).

Item 7 cancels debts owing testatrix by her two named brothers; states that she makes no substantial provision for two named sisters and a third named brother "because of their situation in life and their comfortable financial condition"; that she makes no substantial provision for a named niece (not appellant) of a deceased sister; and no substantial provision for named heirs of another deceased sister.

Item 8. After the payment of all items and bequests hereinabove set out, I direct the rest and residue of my estate, if any, be given to my niece, Bess Conn Falk.

Item 9. I do hereby devise (to) the said Arthur W. Hogg and Bess Conn Falk as trustees in trust all my real estate wheresoever situate (other than my residence property, and other than the depot field, and other than my Port Isabel lots specifically bequeathed) in trust for the purpose of managing, renting out and collecting the rents therefrom, and selling the same, and converting it into money for the purpose of distributing and paying out the same and the proceeds thereof to carry out the bequests and other provisions of this will. And I do hereby authorize and direct my said trustees named in this item to sell the parts and the whole of my said real estate at public auction or at private sale for cash, as they may deem best, and distribute the proceeds in accordance with the provisions of this will, and for the purpose aforesaid, to execute such deeds and conveyances as may be sufficient and proper to that end; and it is my recommendation that any such sales be withheld a reasonable time to be determined by them in the exercise of reasonable discretion under the circumstances to avoid sacrifice of property. Immediately upon my death, the said Arthur W. Hogg and Bess Conn are hereby authorized and directed either as such trustees or as my executor and executrix, as may seem preferable, or as condition or necessity may require, (to) take possession of my said real estate, rent out the same, pay the taxes thereon as and when due, and cost of repairs and upkeep out of rents or out of income received by them therefrom, retaining a reasonable portion of such rents and income for their own services in that behalf.

I hereby nominate and appoint the said Arthur W. Hogg and Bess Conn Falk to be the executor and executrix of this my last will and I request that no bond be required of them. I hereby authorize them as such executors to make such sales and conveyances ▮▮▮▮ as they may deem necessary in the course of the administration of my real estate for the purpose of paying debts and other proper purpose of the administration or of paying legacies.

Item 10 (the last one). I direct that the legacies herein bequeathed shall be payable when sufficient funds for substantial payments thereon shall become available from my personal assets, if any, remaining after carrying out item one hereof, and from the net rents and income from my real estate, and from the proceeds of the sales thereof.

And the positive direction herein to sell my real estate shall render it *personalty under the rule of equitable conversion* at my death for the purpose of distribution under this will (italics ours).

The real estate owned by testatrix at the time of her death was appraised at $19,780.00, and the personal property at $3,633.84.

As we see it five questions are presented: (1) What should be the construction *as to time* of the term *executed* as used in item 2? (2) Under the rule of equitable conversion, did the realty, except the specific devises, upon the death of testatrix, become personal property for the purposes of the will? That is, did testatrix devise any realty to her husband? (3) Is that part of item 2 void which directs that if Mr. Hogg should die before the will was *executed* the devise therein to him would go to the residuary estate? (4) If said direction in item 2 is not void, was Mr. Hogg required to renounce the will? and if he did not renounce the will would the devise to him, should he die before the will was executed, go to the residuary estate? and (5) Did the fact that Mr. Hogg, as executor under the will, entered upon the administration of the estate and accepted compensation for services as executor deprive him of his statutory rights as the widower?

The time referred to by the term *executed* in item 2 could not well be construed to mean October 31, 1931, when the will was signed by testatrix and witnessed by the witnesses thereto. Testatrix knew that her husband, Mr. Hogg, was then living, and such construction would not be sensible and will not be adopted. 57 Am. Jur. Wills, Sec. 1121, p. 716. So there are only *two* possible constructions as to the *time* meant by the term *executed*, namely, *when* testatrix died and the will became operative or *when* the provisions of the will were actually carried into effect and the estate distributed.

Having reference to the time when the will was executed, testatrix twice used the term *executed* in the will; the first was in item 2, and the second in item 4. In item 4, as will be noted, testatrix said, "If the above said note (referring to the note therein mentioned) shall not have been paid before this will is *executed*, then I direct my executors to give her (the beneficiary therein named) the above amount of the note in cash." The term executed as used in item 4 could, we think, in view of the will as a whole, and especially as the term is used in item 2, be construed to have reference to the time when the estate was fully administered and distribution made. If a testator uses a given word in one part of his will with a certain meaning, it will be presumed that in using the word in another part he intended it to have the same significance. Snow et al. v. Ferril, 320 Mo. 543, 8 S. W. (2d) 1008, l. c. 1013; English et al. v. Ragsdale et al., 347 Mo. 431, 147 S. W. (2d) 653, l. c. 655.

In the case of Lamb's Estate v. Hall, 122 Mich. 239, 80 N. W. 1081, it appears that by the will there concerned the testatrix devised all of her estate to her brothers and sisters. Following the bequest to the brothers and sisters and in the same paragraph was this provision: "But in case of the death of any of the above-named legatees previ-

ous to the probating or execution of this, my last will and testament, then I desire, will, and bequeath that the share of such deceased brother or sister shall revert to, and become the property of, the children of said deceased legatee; but, if said deceased legatee has no children living at the time of my decease, then the said deceased legatee's share of property bequeathed to him or her by the terms of this will shall revert to, and become a part of, the general fund to be divided among the surviving legatees named in this, my last will and testament." The testatrix died in March, 1898; her will was admitted to probate and letters testamentary granted June 13, 1898; Carlton Ray, one of the brothers, died December 18, 1898, before distribution of the estate. Prior to the probating of the will Carlton Ray assigned to his wife all his interest under the will. It was held that Carlton Ray's assignment did not pass any interest in the estate to his wife; that under the will his legacy passed to his children since he died before the estate was finally administered and settled. The supreme court of Michigan, in ruling the question, said: "We think it manifest that the intention was to devise her property to her brothers and sisters, and to their children in case of their death before her will was executed. The term 'execution' was, in our judgment, used with reference to the act of the executor in executing the will by settlement of the estate under the provisions of law for the settlement of estates of deceased persons, and distributing the property to her legatees." See also In re Richardson's Will, 229 NYS 299; Lambert et al. v. Harvey et al., 100 Ill. 338; In re Kear, 117 NYS 667, 133 App. Div. 265.

We think and so rule that the term *executed* as used in item 2 of the present will means *when* the provisions of the will were actually carried into effect and the estate distributed.

 Under the rule of equitable conversion, did the realty, except the specific devises, upon the death of testatrix become personal property for the purposes of the will? That is, did testatrix devise any realty to her husband? "Equitable conversion may be defined as that constructive alteration in the nature of property whereby, in equity, real estate is considered for certain purposes as personalty, or vice versa, and is transmissible and descendable as such. It is a mere fiction resting upon the principle that equity regards things which are directed to be done as having actually been performed where nothing has intervened which ought to prevent such a performance. Therefore, for property to be treated as converted, it must be subject to a trust or a clear and imperative direction for conversion." 19 Am. Jur., Equitable Conversion, p. 2, Sec. 2. It will be noted that the text quoted says that "for property to be treated as converted", under the rule of equitable conversion, "it must be subject to a trust or a clear and imperative direction for conversion". It will be conceded, we think, that in the present will,

item 10, there is clear and imperative direction that the directions in the will to sell the real estate "shall render it personalty" upon the death of testatrix, under the rule of equitable conversion, did so render it. We therefore rule that under the will the real estate of testatrix, except the specific devises, became upon her death personalty for the purposes of the will. Odom et al. v. Langston et al., 355 Mo. 109, 115, 195 S. W. (2d) 463, l. c. 465; Hull v. McCracken et al. (Mo. App.), 53 S. W. (2d) 405; Rawlings v. Rawlings et al., 332 Mo. 503, 58 S. W. (2d) 735, l. c. 739 (20, 21); Powers et al. v. Grand Lodge of Ancient, Free and Accepted Masons, 237 Mo. App. 825, 177 S. W. (2d) 529, l. c. 536 (2); Turner et al. v. Hine et al., 297 Mo. 153, 248 S. W. 933.

Is the provision of item 2 void which directs that if Mr. Hogg should die before the will was *executed*, the devise therein to him would go to the residuary estate? And if said part of item 2 is not void, was Mr. Hogg required to renounce the will? and if he did not renounce the will would the devise to him, should he die before the will was executed, go to the residuary estate? These two questions are so related that the answer of either disposes of the other. Respondents say that the condition in the devise to Mr. Hogg in item 2, should he die before the will was executed, would go to the residuary estate is, under the facts, contrary to the statute law of the State and void. Respondents cite: Secs. 324 and 325, R. S. 1939, Mo. RSA Secs. 324 and 325; In re Dean's Estate, 350 Mo. 494, 166 S. W. (2d) 529; In re Opel's Estate, 352 Mo. 592, 179 S. W. (2d) 1; Szombathy v. Merz et al., 347 Mo. 776, 148 S. W. (2d) 1028; Merz v. Tower Grove Bank & Trust Co. et al., 344 Mo. 1150, 130 S. W. (2d) 611; Nies v. Stone, 232 Mo. App. 1226, 117 S. W. (2d) 407; In re McElevey's Estate, 305 Mo. 244, 266 S. W. 123.

Our references to statutes, unless otherwise noted, refer to our 1939 Revised Statutes and to the same section number in Mo. RSA.

In the case of In re Dean's Estate the question for decision was whether the widow of the testator was entitled to one half of the net estate as her absolute property under Sec. 325 independent of her deceased husband's will. The subject matter of Sec. 325 is what a widow shall be entitled to when the husband dies without descendants, but the section is applicable when a wife dies without descendants, as here, because since curtesy has been abolished, Sec. 319, the husband and the wife fare alike in their respective estates. Lee's Summit Building & Loan Assn. v. Cross, 345 Mo. 501, 134 S. W. (2d) 19, l. c. 25 (15, 19).

In the case of In re Dean's Estate, supra, only personal property was concerned and that is the situation in the present case, because as we have ruled, testatrix's realty, except the specific devises, became, upon her death, personalty for the purpose of the will under the rule

of equitable conversion. The Dean will bequeathed the entire residuary estate to the widow. She did not file a written election either under Secs. 327 and 329 or otherwise; neither did she renounce the will under Sec. 333 nor otherwise. She sought to claim one half of the net estate independent of the will although the will gave her more; such claim was made by the widow because of the effect such would have, as she claimed, in reducing her inheritance tax. She claimed that she could take the one-half interest under the statute and the remainder of the residuary estate under the will and that the statutory one-half interest would be exempt from the State inheritance tax under Sec. 576. The State contended that the widow could not take the residuary estate partly under the statute and partly under the will; that the will did not authorize such; that if she desired to take pursuant to the statute she should have renounced the will. It was held that the widow could take the one-half interest under the statute without making a written election and without renouncing the will. This was because the entire estate was *personalty* and such is the situation here.

In the case of In re Opel's Estate, supra, the question of renouncing a will was not especially involved, but the question of the necessity of a widow making an election under the statute was involved. In that case it was contended by the appellant that the widow of a deceased husband who left no descendants could not take one half of his personal property under Sec. 325 without filing an election under Secs. 327 and 329, citing Bryant v. Christian, 58 Mo. 98, in support of such contention. In ruling the point the court said [179 S. W. (2d) l. c. 3]: "Since then (the Bryant case) this court en banc decided in In Re Dean's Estate, 350 Mo. 494, 166 S. W. (2d) 529, that a widow under such circumstances is entitled to one half her deceased husband's personalty, subject to his debts, without filing an election, and that she is not deprived of that right by contrary provisions in his will. We also held in that case that the holding in the Bryant case on this point was overruled in Kloche v. Kloche, 276 Mo. 572, 208 S. W. 825. Cases cited in the Dean case will show that our ruling there is in harmony with our decisions since the Bryant case and with many decisions of our courts of appeals."

The learned trial court in the present case filed a written opinion and that opinion appears in the record. In the opinion the trial court said:

"It is perfectly obvious and clear from the very words above quoted in item ten that under the will of Agnes R. Hogg, the real estate she owned was converted into personalty perforce of said item and the date of the conversion was the death of the testatrix. Therefore, when Agnes R. Hogg converted her real estate into personal property it was not necessary for her husband to renounce the will and elect to take one-half interest in the personal estate, because

that interest is given to him under the law without such election'', citing In re Dean's Estate and In re Opel's Estate, supra.

It will not be necessary to review other cases. We rule that the provision in item 2 which directs that if Mr. Hogg should die before the will was executed, the devise therein to him would go to the residuary estate is void, and that it was not necessary for him to renounce the will in order to take under the statute.

██ Did the fact that Mr. Hogg, as executor under the will, entered upon the administration of the estate and accepted compensation as executor deprive him of his statutory rights? We here give some of the activities of Mr. Hogg in the administration of the estate as executor during the 8 months he survived after the death of his wife, the testatrix. He verified and filed the inventory; paid the appraisers; paid taxes; paid a claim for nursing; acknowledged presentation of a demand against the estate; he and appellant as executors satisfied the legacy in item 4 of the will; he appeared in probate court and asked for and obtained an order to sell a savings bond of the estate, and to transfer certain stocks belonging to the estate. April 18, 1946, prior to his death on April 22d, and when in the hospital, he and appellant as executors signed two checks for $1012.60 each. These checks were payable respectively to Mr. Hogg and appellant for services as executors under the will. Mr. Hogg's check was endorsed by him, deposited in his personal account and charged to the estate.

In view of the fact that the realty, except as to the specific devises, under the rule of equitable conversion, was by the will made personalty upon the death of testatrix for the purposes of the will, we do not think that Mr. Hogg, despite his activities as executor and the receipt of the $1012.60, was deprived of his statutory rights. In the case of In re Bernays' Estate, 344 Mo. 135, 126 S. W. (2d) 209, l. c. 216, 122 ALR 169, it is broadly stated that it is a general principle of law that one cannot claim under a will and against it too, and that one who accepts a beneficial interest under a will thereby adopts the whole will and renounces every right or claim inconsistent with the will, citing Wood v. Conqueror Trust Co. et al., 265 Mo. 511, 178 S. W. 201; Trautz v. Lemp et al., 329 Mo. 580, 46 S. W. (2d) 135; Moseley v. Bogy et al., 272 Mo. 319, 198 S. W. 847; Colvin et al. v. Hutchison et al., 338 Mo. 576, 92 S. W. (2d) 667, 105 ALR 226; Arrington et al. v. McCluer et al;, 326 Mo. 1011, 34 S. W. (2d) 67. All these cases, except the Trautz case, as was pointed out in the case of In re Dean's Estate, supra [166 S. W. (2d) 533], dealt with realty and not personalty. And in the Dean case [166 S. W. (2d) l. c. 533] the court considered the Trautz case and pointed out that the case held the solution of the question '' 'depends upon whether or not the testator intended the bequest in the will to be in lieu of or in addition to that which the law gave the widow;'

and decided the testamentary provision there under consideration was intended to be in lieu of the widow's right to a child's share in personalty under Sec. 323''. There is nothing in the Trautz case or any other case that would support a holding, under the facts here, that Mr. Hogg, by his activities as executor in the administration of the estate and the acceptance of the $1012.60 should operate to deprive him of his statutory rights as the surviving widower.

The judgment should be affirmed and it is so ordered. *Dalton, C.,* dissents; *Van Osdol, C.,* concurs.

PER CURIAM: The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court.

*Hyde, J.,* concurs in result in separate opinion; *Douglas, J.,* concurs in result and in opinion of *Hyde, J.; Clark, P. J.,* concurs in result in separate opinion; *Conkling, J.,* concurs in separate opinion of *Clark, P. J.*

CONCURRING OPINION

█ CLARK, P. J.—I concur in the result of the principal opinion, but do not agree that the testatrix intended the term ''executed'' to refer to █ the time when her estate should be finally administered.

By item 4 testatrix directed her executors to pay a note signed by her niece with testatrix as surety; and if the note be paid before the will is *executed,* to give the amount to the niece. I think this means that if the note is outstanding at the death of testatrix the executors shall pay it to the holder [thereby releasing the estate] and that, if the note is unpaid at her death, the testatrix did not mean that the executors should give the amount to the niece and rely upon her to pay the note to the holder. In this clause, I think the word *executed* clearly refers to the time the will should become effective at and by the death of the testatrix. The same construction of the term *executed* is, I think, authorized by item 2. There the will gives Arthur W. Hogg one-half the residue of the estate ''according to his dower right as *surviving widower* under the laws of Missouri,'' but if he should die before the will is *executed,* [that is becomes effective] his *dower* and *bequest* shall remain a part of the estate. Arthur W. Hogg, having become the ''surviving widower'' by outliving the testatrix, took one-half the residue of the estate *under the will* as the equivalent of his dower right.

█ But, even though the construction outlined above is incorrect, I think that Arthur W. Hogg took one-half of his wife's estate. In her life and up to the moment of her death she owned a large amount of real estate, subject to her husband's inchoate right of dower. Under the doctrine of equitable conversion, by the plain terms of her will, she transformed the real estate into personalty *at the moment*

*of her death.* By failing to renounce the will, her surviving widower consented to the equitable conversion, but did not thereby relinquish his dower right in the property in its converted form as personalty.

As reasoned and held in the principal opinion, the surviving widower, without making an election, was entitled to one-half the estate as personalty, subject to debts, "according to his dower right," and his actions as executor were not inconsistent with such right.

### SEPARATE CONCURRING OPINION

HYDE, J.—I concur in the result herein. However, I think we should reach this result by holding that the term "before this will is *executed*" means before the will becomes effective; and not before the estate was fully administered and final distribution made.

The word "executed" is "described as a very general word of wide import and defined generally as meaning carried into effect." 33 C. J. S. 119. I think this meaning is the one that really carries out the intention of the testatrix and is the most reasonable from a construction of the whole will as well as from a consideration of the two paragraphs in which it is used.

Item 2 states that the testatrix gives to her husband one-half of her estate "according to his dower right as surviving widower under the laws of Missouri." This clearly shows that the testatrix intended for her husband to have what the law would give him and was not attempting to deprive him of any statutory rights. I do not think it is reasonable to say that she meant by this will to take anything away from him in case he died before her estate was fully administered and finally settled. On the contrary, I think this provision was in full recognition and confirmation of what the law would give him at her death; and was intended to give him the same interest, by this provision of the will becoming effective at her death, which would have vested at her death by operation of law. The testatrix undoubtedly meant to make this subject only to her debts, funeral expenses and cost of monument by her reference to Item 1.

I do not think that Item 4 requires any different construction. In fact, I think it also shows that she used the term "executed" to mean become effective or to go into effect. It gives a $550.00 note to her niece and provides that if the "note shall have been paid before this will is executed" then the executors should give her this amount in cash. Certainly it would not be contemplated that her niece, after the note had already been given to her by the will, would thereafter go through the useless act of paying it off in order to get the same amount of money back later when final settlement was made. This provision indicates to me just as strongly as the provision for her husband "according to his dower right," that the testatrix meant, by the will being executed, its becoming effective as a legal transfer

of the property upon her death. I believe this is a more natural meaning to a layman than the meaning of complete settlement of the estate a year or two later by the executors designated in the will.

This construction makes it unnecessary to reach the result that Mr. Hogg got a vested interest in one-half of the estate, at his wife's death, by holding void the provision, about his death before the will is executed, as an attempt to deprive him of his statutory rights in her estate. I do not think we should hold a provision of the will void if there is a reasonable construction upon which it can be held valid. I think there is such a reasonable construction, for the reasons above stated; and that the judgment should be affirmed for these reasons.